*STATE v. THOMAS P. BOWMAN.

*Judge's Charge—Jury—Evidence—Post Mortem Examination—
Ridings of Judges.*

1. It is not error in a judge, after giving an instruction asked by the prisoner on a trial for murder, that he was entitled to an acquittal unless the state proved him guilty beyond a reasonable doubt, to superadd thereto, that when a wilful killing was proved the law presumed malice and the burden of showing mitigating circumstances was thrown on the prisoner.

2. Nor is it error where the court refused to charge, that in case one of the jury had a doubt as to the guilt of the prisoner the other jurors should yield to him.

3. The prayer was, that every link in the chain of circumstantial evidence must be as satisfactorily proved as the main fact of the murder; and the judge in reply said, that in a case in which the jury are asked to convict on circumstantial evidence they must be fully satisfied of every link in the chain; *Held* to be a substantial compliance with the prayer.

4. The jury are the sole judges of the weight of testimony.

5. A juror who stated on his *voir dire* that he had conscientious scruples against capital punishment is incompetent.

6. Where declarations were offered as evidence on a trial for murder as having been made in prisoner's presence and not contradicted by him, *it was held* to be properly left to the jury to determine whether they were made in his hearing, whether he understood them, what his conduct was on the occasion, and to say what value should be attached to these circumstances as tending to prove the prisoner's guilt.

7. A *post mortem* examination of the body of a deceased person alleged to have been poisoned, and a chemical analysis of organs and tissues taken therefrom, may be had without the presence of the prisoner or his counsel.

8. The provision of the constitution that no judge shall hold the courts in the same district oftener than once in four years, has reference to the ridings of the nine districts under the new apportionment.

(*State* v. *Johnson*, 3 Jones, 266; *State* v. *Willis*, 63 N. C., 26; *State* v. *Perkins*, 3 Hawks, 377, cited and approved.)

*Dillard, J., having been of counsel did not sit on the hearing of this case.

STATE *v.* BOWMAN.

INDICTMENT for Murder removed from Guilford and tried at Fall Term, 1878, of RANDOPH Superior Court, before *Kerr, J.*

The prisoner was charged with killing his wife by administering poison. The evidence in support of the charge was circumstantial, and only that part as was deemed material to the exceptions taken is incorporated in the statement of the case sent to this court; and that which is deemed sufficient to an understanding of the opinion is as follows: Martha Cole, a witness for the state, testified in the course of her examination that about two hours after the death of Mrs. Bowman, she went around the prisoner's dwelling towards the kitchen which was situated about twelve yards from the dwelling, and was about seventeen by fourteen feet in size, with a north door and a south door. The witness on going into the kitchen at the north door saw prisoner sitting on a bench at the east end of the kitchen, just twelve feet from the south door. The prisoner and deceased's little daughter, Eliza Jane Bowman, was sitting in the south door and a servant was putting on her shoes. Just as the witness went into the kitchen, having the instant before seen prisoner sitting on the bench as above stated, one of the women present said, " I'd like to know what Mrs. Bowman did say when she was dying;" and thereupon the little girl turned around, put both hands on the floor, looked up, and said, " I can tell you what she said. Mama told papa when she was dying that she was poisoned, and she got her dose in that drink of liquor he gave her this morning; and that was the last word mama said." The prisoner then came and took the child up in his arms, smiled, carried her off, and kept her with him in his immediate presence while the company remained at the house. The witness further stated that she knew the prisoner was in hearing when these declarations were made. The exception to this testimony was overruled, and in the charge to the jury in respect thereto, His Honor said " that

28

it was admissible, not as in itself of any weight against the prisoner, but as calculated, should the jury believe he heard and understood what his little daughter then said, to call forth from him some response in words, or some action, which response and which action are alone to go to the jury and to be considered by them in making up their verdict." The court further charged that it was for the jury to say, from all the evidence in the case, whether the declarations of the little girl were made in the hearing of the prisoner, and how far his action tended to prove his guilt.

Prof. Redd, an expert in chemistry, was introduced by the state and testified that he went to Reidsville on the 24th of July, 1877, on his way to disinter the body of the deceased, and to take therefrom the tissues and organs for chemical analysis; that he declined to proceed until the prisoner's counsel were notified; upon notice given, three gentlemen of the bar of counsel for prisoner went with the witness and saw the organs, &c., actually taken from the body of the deceased, and the means the witness used to preserve and transport them to the state university at Chapel Hill where the analysis was made; that he informed said counsel of his intention to make a chemical analysis of said organs, and would have admitted an expert or agent of the prisoner to be present, had the prisoner or his counsel requested it. When the witness was about to give the result of the analysis, the prisoner's counsel objected on the ground it had been made without notice to the prisoner or his counsel, and was therefore *ex parte* and inadmissible. The objection was overruled, and the witness stated that the analysis disclosed the presence of strychnia in the said organs and tissues.

The facts applicable to the other exceptions are stated in the opinion. Verdict of guilty, judgment, appeal by prisoner. See same case, 78 N. C., 509.

STATE *v.* BOWMAN.

*Attorney General* and *Boyd & Reid,* for the state.
*Messrs. Reid & Glenn,* for the prisoner.

ASHE, J.   The record and statement of the case are quite
voluminous, but it is only necessary to notice so much
thereof as is pertinent to the instructions prayed for and the
exceptions taken by the prisoner.

First, as to the special instructions asked :—

1. "That the burden of proof was on the state, and that
the state must prove the prisoner to be guilty to the satis-
faction of the jury beyond a reasonable doubt, or else the
prisoner was entitled to an acquittal."   This was given, and
His Honor committed no error in superadding thereto, "that
when the act of killing a human being wilfully is fully
proved, the law presumes the killing to have been done with
malice aforethought, and the burden of proving mitigating
and justifying circumstances is thrown on the party who
claims the benefit of these circumstances. *State* v. *Johnson,*
3 Jones, 266 ; *State* v. *Willis,* 63 N. C., 26 ; Foster, 255.

2. "That the law requires them to be unanimous in their
verdict, and in case one of the jury had doubts as to the
guilt of the prisoner, it was the duty of the other jurors to
y'eld their convictions and give the prisoner the benefit of
the doubt existing in the mind of the juror.   His Honor
did not give this instruction, and there was no error in his
refusal, for it is an extraordinary proposition that eleven ju-
rors who are satisfied beyond a reasonable doubt of the
guilt of a prisoner should yield their convictions to the
*doubt,* the mere doubt of one of their number; or, in other
words, that one juror who might have or profess to have a
doubt should control his eleven fellows.   If that were the
law, it would be found difficult to convict of a capital of-
fence.

3. "That every link in the chain of circumstantial evi-
dence must be as satisfactorily proved to the jury as the

main fact of the murder itself." His Honor did not give the instruction in so many words, but the charge he did give was a substantial compliance with the prayer of prisoner, to-wit, "that in a case in which a jury are asked to convict on circumstantial evidence, they must be fully satisfied of every link in the chain of evidence upon which the state relies for conviction."

4. " That the testimony of Prof. Redd as to his *ex parte* analysis was entitled to but little weight." In response thereto, His Honor told the jury that they were the sole judges of the weight of testimony, and in this there was no error.

Second, as to the exceptions taken :—

1. In the formation of the jury : A juror was called who stated that he had conscientious scruples against capital punishment, and that it would hurt and do violence to his conscience to render a verdict of guilty, but if the evidence satisfied him beyond a reasonable doubt that the prisoner was guilty, he could bring in a verdict of guilty ; yet it would hurt and do violence to his conscience. He was challenged for cause by the state, the challenge was allowed, and the prisoner excepted. We think there was no error in allowing the challenge, for the juror was clearly exceptionable. It is the object of the law and the duty of the court to see that the prisoner has a fair trial, and at the same time to guard the interest of the public ; and to that end the jury impanneled to pass upon the issue between the prisoner and the state should be impartial and competent. A man who has conscientious scruples against capital punishment, no matter how much disposed to discharge his duty, would be an unsafe juror, because he would naturally be influenced by his prejudices and go into the jury box with such a bias in favor of the prisoner as would render him incompetent to do justice to the state. Therefore he has been held to be an im-

competent juror. *People* v. *Daman*, 13 Wend., 351; *Com.* v. *Fisher*, 17 Serg. & Rawle, 155.

2. The prisoner excepted to the admission of the declarations of Eliza Jane Bowman, the daughter of the prisoner, in reference to the "last words" of her mother, the deceased. They were clearly admissible for the purpose for which they were proved, and the remarks of His Honor in commenting upon this testimony before the jury were perfectly legitimate. They were told it was for them to determine whether the declaration was made in the hearing of the prisoner, whether he heard and understood the statement, and if so, what was his conduct on the occasion; did he immediately take up the child and bear her away in his arms and keep her constantly in his immediate presence while the company remained; and if they believed this testimony, it was for them alone to say what value was to be attached to these circumstances as tending to prove the prisoner's guilt. *State* v. *Perkins*, 3 Hawks, 377.

3. The prisoner objected to the testimony of Prof. Redd on the ground that there was no notice given to the prisoner or his counsel of the time of the disinterment of the remains of the deceased, nor of the analysis of the organs and tissues taken from her body to be subjected to the test to ascertain the presence of poison. The objection has no foundation, and if it had, the proof is that Prof. Redd was accompanied by at least one of the counsel for the prisoner, when the body was disintered; but we know of no law which gives the prisoner the right to be present in person or by counsel or agent, when the body is disintered, or when the organs and tissues are subjected to a chemical analysis.

4. The prisoner moved in arrest of judgment on the ground that under the constitution, Art. IV, § 11, it is provided that "no judge shall hold the courts in the same district oftener than once in four years," and that Judge *Kerr*, who presided in the court in which the prisoner was tried,

had held the courts in the district to which Randolph county was then and is now attached, during a period short of four years. Under the amended constitution the judicial districts of the state were reduced from twelve to nine, which caused a very considerable change in the formation of the districts. This new apportionment of the districts did not go into operation until after the first Thursday in August, 1878, and this provision of the constitution had reference only to the ridings under the new arrangement. Randolph county before the alteration of the districts was in the seventh, and is now in the fourth district, which is not identical in its component parts with what had been the seventh. There was no violation of the constitution. Judge *Kerr* had the right to hold the court in Randolph county in the fall of 1878, and the motion in arrest was properly disallowed.

Being fully sensible of the great stake the prisoner has in the result of our deliberations, we have given this case the most careful consideration and have been unable to discover that he has been prejudiced by anything which has occurred in the conduct of his trial. There is no error. Let this be certified to the superior court of Randolph county that further proceedings may be had according to the laws of the state.

PER CURIAM.                                    No error.