RILEY *v.* STATE.

[65 South. 882-127.]

CRIMINAL LAW.   *Admissions.   Acquiescence by silence.*

> Where accused was imprisoned with his wife, who had been convicted of murder, evidence that his wife had been overheard to say to him that he had forced her to kill deceased and to take the responsibility, was not admissible on the ground that he did not deny her statement, but was silent, since under the circumstances of this case a normal man would probably have remained silent.

APPEAL from the circuit court of Wayne county.

HON. J. L. BUCKLEY, Judge.

Jim Baley was convicted of murder, and appeals. This was heard on suggestion of error.

The facts are fully stated in the opinion of the court.

*S. M. Johnston* and *J. A. Anderson,* for appellant.

Here we have the wife accusing the husband of the killing of the deceased.   And from the statement of the wife we see that it is not her intention to accuse the appellant of the crime but that she is deploring the fact ''that she must go to the penitentiary'' while the appellant lays around here with another woman.''   The minds of both parties are evidently filled with thoughts of the ''other woman,'' and while in a fit of jealousy the wife accused her husband of the crime.   Is the declaration then of an excited person, accusing another of a crime, of such potency, that it calls for a reply from .

the accused. Our idea of an accusation in order to merit
a reply, must be made by a cool, serene, calm and delib-
erate mind, whereby the person accused may under-
stand from the manner of the statement he is expected
to make a reply. In *Massachusetts* v. *Kenney*, 12
Metcalf 235, 46 American Decisions 672, the court says:
"Where two watchmen arrested A and carried him to
prison for robbing B, who also came, saying: 'That
man has stolen my money,' and A was seen by C to
hide a bag on the shelf in the prison as he was about
to be locked up, and C immediately got the bag of
money when B said: 'it was his bag and all the money
he had,' to all of which A made no reply, on an indict-
ment against him for stealing the money, it was held
that the declarations of B were not evidence of A's
admissions, either of the stealing or that the money
was B's. The court further says  that they were made
by an excited, complaining party to such officers, who
were just putting him into confinement." Upon these
statements of facts a new trial was granted. Nor was
the defendant at bar in the calm tenor of his mind.
Confusion upon confusion was hurled into his brain;
worry after worry weighed upon his mind. His wife
had just been convicted of murder, he himself was under
indictment for the same crime, his wife was accusing
him of loving another woman, and is it a wonder that
he, himself, should come out of his lethargy, and make
a reply where the controversy was about the woman.
"Do your honors think that under the circumstances,
your appellant was in duty bound to make a reply, if so,
you must pardon something to the frailties of man-
kind." We don't think that these facts meet the re-
quirements of number one and two.

Your honors must remember that admissions by
acquiescence must be weighed carefully for "trifles light
as air, sometime become confirmations strong as proofs
of holy writ." Ofttimes the shrewd criminal's acts are

in harmony with innocence, while a good, innocent man, will blush, and sometimes startle under the torture of false accusation. Even confessions actually made by the defendant are looked upon with the closest scrutiny by all courts, and if there is anything suspicious about the looks of them they are not admitted as evidence. Surely then your honors are not going to admit as evidence the mere shadows of confession, only skeletons of evidence.

In 123 Mass. 440, the court held that where an accomplice of the defendant, accused the defendant, to an officer, of giving him a stolen watch, the accused was not called upon to reply to or contradict any statements made in his hearing. *Commonwealth* v. *McDermott,* 25 American Reports 120, 123 Mass. 440.

Your honors readily see that certain circumstances do not compel the accused to make a reply. In both of the above cases the accused was in custody of the law. Unless the circumstances are so plain that he could answer, by the force of the accusation and by his environment, then we contend that he had a perfect right to stand mute.

Your defendant had already been accused of crime by an indictment, and by an affidavit in the lower court. Is it to be said that he must, at every time the accusation is thrown into his face, make denial after denial? Surely the defendant was not called upon to deny this charge.

For the foregoing reason, attorneys for the appellant think that your honors should reverse appellant's case and grant unto him a new trial.

*Geo. H. Ethridge,* for appellee.

Counsel for the appellant have objected to the effect of the statements made by Mrs. Riley to Mr. Riley as being incompetent on the theory that the probative effect of such evidence flows from the statement of the wife and inasmuch as she was incompetent to testify against

the husband directly, she could not testify against him indirectly. Counsel for appellant are mistaken in assuming that the probative effect of this statement arises from the statement made by the wife but it arises from the admission of the husband. The true theory of the law on this subject is that the statement made in the presence of such a person, charging him with crime, and which he would ordinarily feel impelled to deny, is a tacit admission of the truthfulness of the statement. The probative effect of such evidence is derived from the failure of the party to deny. It is treated as an admission coming from the party and such being the case it doesn't matter who addresses the charge to him or makes the charge which he is called upon to deny or which he would naturally deny if the statement were untrue. The competency of the witness making the statement which he has not denied has nothing to do with the matter. At common law, quite a number of parties were incompetent to testify, but I think it would not be assumed that a statement made by such party in the presence of another person which such other person failed to deny would be any less effective when made by an incompetent witness than it would be if the witness were competent.

At common law, an infidel or an atheist was absolutely incompetent to testify. It would not prevent a party being called upon to respond to an accusation made him in any such case. Under the laws of this state, at present, a person who has been convicted of the crime of perjury or subornation of perjury is absolutely disqualified from testifying in court, still they might make a statement in the presence of another party and the failure of such party to deny it would have the same probative effect as if the charge was made by a competent witness.

The question of evidence in this case does not arise on the ground of the incompetency of the wife testifying

against her husband. If the conversation was privileged at all, it was on the theory of privileged communications or conversations between husband and wife growing out of the marriage relation and the public policy which ordinarily protects conversations between husband and wife from being given in evidence against either party.

It is stated in 6 Cyc. of Evidence, 897, clause "c" "Basis of Rule" as follows: "The basis of this rule excluding communications or conversations between husband and wife during coverture, is public policy and is wholly independent of any question of interest or identity.

And this same public policy is very generally recognized by the statutes, at page 906 of 6 Ency. of Evidence, under the heading of "Conversations in Presence or Hearing of Third Person," it is said: "Conversations between husband and wife, or admissions by one to the other, in the presence of the third person, are not privileged, and can be testified to by the hearer. And it has been held that a conversation between husband and wife might be testified to by a concealed listener who overheard it. It is held, however, that a wife is not a competent witness to prove what was said in a conversation by another person with her husband, nor to prove any act done in connection with such conversation and which might be explained thereby."

In *Allison* v. *Barrow,* 3 Coldwell, 414, 91 American Dec., 291, it is stated that conversations between husband and wife when made in the presence of a third person do not belong to the class of privileged communications and may be given in evidence against the husband. The force and effect of the admission depend upon the circumstances upon which it is made.

In discussing the question of privileged communications between attorney and client, which are ordinarily privileged, it was held in *Whiting* v. *Barney,* 86 Am. Dec. 385, 80 N. Y. 380, that such communications were not

confidential and privileged when made in the presence of a third person. See also: *Gaynon* v. *People,* 127 Ill. 507; 21 N. E. 525; *Fay* v. *Guynon,* 131 Mass. 31; *State* v. *Dray,* 55 Kan. 135; 39 Pa. 1050; *Phoenix F. & M. Co.* v. *Shoemaker,* 95 Tenn. 72, 31 S. W. 270. And this is true even where the conversation was overheard by a concealed listener. *Rex* v. *Simmons,* 6 Car. & P. 540; 25 Ecl. 565; *Leon* v. *Prowdy,* 154 Mass. 488, 28 N. E. 908; *Commonwealth* v. *Griffin,* 110 Mass. 181; *People* v. *Hayes,* 140 N. Y. 484, 35 N. E. 951, 37 Am. St. Rep. 572; 23 L. R. A. 830; *Wheeler* v. *Campbell,* 68 Vt. 98; 34 Atlantic 35; *State* v. *Center,* 35 Vt. 378; *Knight* v. *State,* 114 Ga. 48, 39 S. E. 928.

In 1 Encyclopedia of Evidence, under the head of "Admissions," page 367, in subdivision, "From Silence and Acquiescences," it is said: "So the silence of a party, when a statement is made in his presence, against his interest, and is heard and understood by him, and is made in such way as to call upon him to deny it, if true, and the facts are within his knowledge, and the statement is made under such circumstances as naturally to call for a reply, amounts to an admission of the truth of the statement made, and may be sufficient to establish the fact as against him." *State* v. *Farish,* 23 Miss. 483, and other authorities cited in note 27 to the above text.

COOK, J., delievered the opinion of the court.

Appellant was convicted of the murder of Julius Bee and appeals. His wife was also convicted of the same crime before appellant was tried. Some weeks since this case was affirmed without an opinion. The case is here now on suggestion of error.

After the conviction of Mrs. Riley, she and her husband, appellant, were confined in jail together with a number of other persons charged with crime. Over the objections of appellant, the trial court permitted several of the inmates of the jail to testify that they

overheard a conversation between appellant and his wife. We gather from the record that the alleged conversation occurred some time late in the night. The conversation awakened several of the prisoners, and it is evident that neither appellant nor his wife knew that they had eavesdroppers. The witnesses for the state practically agreed upon what was said in this conversation, and it amounts to about this: The wife was bemoaning her fate, and said to appellant that he had forced her to take the entire responsibility, when he knew that he had made her kill Julius Bee. The only reply made by appellant to this charge was to say:

"Hush, Bessie, if you go to the penitentiary, you won't be gone over six months before you get a pardon. If they convict me, they will hang me."

The conversation as related by the state's witnesses varied somewhat, but what has been stated is substantially the evidence of all.

It is contended by appellant that, inasmuch as the wife could not have been introduced to testify that she had charged defendant with the crime and he did not deny the charge, it follows that others could not be introduced to testify to this charge, citing *Pearson* v. *State,* 97 Miss. 841, 53 So. 689.

Again, it is insisted that defendant was not called upon to deny what his wife said under the circumstances.

The rule and the reasons for admitting testimony of this kind is clearly stated in 1 Encyclopedia of Evidence, p. 367, viz.:

"So the silence of a party when a statement is made in his presence, against his interest, and is heard and understood by him, and it made in such way to call upon him to deny it, if untrue, and the facts are within his knowledge, and the statement is made under such circumstances as naturally to call for a reply, amounts to an admission of the truth of the statement made, and may be sufficient to establish the fact as against him."

We think appellant misconstrues *Pearson* v. *State,*
*supra.* In that case a witness for the state was per-
mitted to testify to conversation between the defendant
and his wife in which the wife charged the husband with
the crime. It was not claimed that the wife knew any-
thing about the facts, but simply based her charges upon
what some other person had told her.

We do not understand that the court in the *Pearson*
*case* condemned the evidence because of the incompe-
tency of the wife to testify against her husband, but for
the reason that the statement made by her was purely
hearsay.

All of the evidence here in question shows that the
defendant was sympathizing with his wife and was
trying to comfort her with the assurance that she would
soon be released. She was naturally hysterical and much
depressed. Under these circumstances, was the defend-
ant called upon to repudiate what his wife said to him?
Was the charge "made in such a way as to call upon him
to deny it"?

It is not always conducive to domestic peace for a hus-
band to contradict the statements of his wife, and ordi-
narily the wise husband attempts to soothe and placate
his irate spouse, rather than to question her statements,
however wide of the truth they may be. A few hus-
bands are brave or foolhardy, and at all hazards risk
the consequences; but the law does not fix rules for the
guidance of the superman, but all rules are adopted for
the average. Of course, a judge far away from "the
firing line" incurs no immediate danger by lining up
with the superman, but we who are fashioned in the
average mold shrink from even that form of bravado.
Speaking for the average man, we are of opinion that
appellant was not called upon to deny the statement of
his wife, made under the circumstances surrounding
them at the time. His failure to deny, dispute, or hedge
meets with our idea of what a normally prudent and

sensible man would naturally have done, and therefore the evidence had no probative value, but was probably very damaging to him with the jury.

The suggestion of error is sustained.

*Reversed and remanded.*

REED, J. (dissenting).

I cannot assent in the reversal of this case. In my view appellant was accorded a fair trial and the verdict of guilty is supported by the evidence.

The case is reversed because the trial court erred in admitting the testimony, given by several witnesses, of a conversation which they overheard between appellant and his wife while both were confined in the county jail. In that conversation the wife charged appellant with committing the crime and he made no denial of it. It is held in the majority opinion that appellant "was not called upon to deny what his wife said under the circumstances," and that the evidence had no probative value.

Admissions may be implied from the mere silence of a party. The following statement of the rule is contained in Jones on Evidence, vol. 2, par. 289:

"The rule is well settled that conversations between parties to a controversy, in which one makes a statement of fact of which both have personal knowledge, and which naturally calls for a denial by the other if the statement is untrue, are competent against the silent party, as admissions, by acquiescence, of the truth of the statement. The weight of the admission varies with the circumstances of the case, and the strength of the probability that the statement, if untrue, would have evoked a denial, and is always for the jury, guided by a proper caution of the court as to the theory upon which such conversations are admitted."

The law on this subject is further stated in Ruling Case Law, vol. 1, par. 15, as follows:

"If a statement is made in the hearing of another, in regard to facts affecting his rights, and he makes no reply, it may be a tacit admission of the fact stated; depending upon whether he hears and understands the statement, and comprehends its bearing, whether the truth of the facts embraced in the statement is within his own knowledge, whether the circumstances are such as to afford him an opportunity to act and speak freely, and whether the statement is made under such circumstances and by such persons as naturally to call for a reply if he did not intend to admit it."

I make this further quotation from the same paragraph of this very helpful digest and compendium of the law:

"It may be stated as a general rule that statements made to or in the presence of a person, accusing him of commission of or complicity in a crime, are, when not denied, admissible, in evidence against him as warranting an inference of the truth of the statements."

It has been decided that a statement calling for a denial, made in the presence of one accused of a crime by his wife, who is herself not a competent witness against him, is admissible in evidence against him. *Dunham* v. *State*, 8 Ga. App. 668, 70 S. E. 111.

In the case of *Commonwealth* v. *Griffin*, 110 Mass. 181, defendant was indicted for manslaughter, and the testimony of two officers who were concealed for the purpose of listening was offered to prove a conversation between the defendant and his wife, while in jail, concerning the homicide. They did not know that the witnesses or any persons were in hearing of them. The court held that this testimony was admissible.

It is clear that the testimony of the conversation between appellant and his wife, in which he failed to make denial when he was charged with the homicide, is admissible unless there is some circumstance or reason to relieve him of denying the charge. I do not see any

107 Miss. 39

such circumstances or reason in the proof in this case.
Certainly appellant heard and understood the charge
made against him. The statement made by his wife was
of something within his knowledge. It was not a state-
ment made by a stranger whom he was not called on to
notice. The testimony does not show that he was
restrained by fear of his wife at the time. He certainly
then knew his rights. It can hardly be said he then
believed that his security, in so far as his prosecution
for the offense was concerned, would be best promoted
by his silence. I think that the statement made by the
wife was under such circumstances as to call for a reply.

I note with much interest the statement in the ma-
jority opinion that the wise husband will refrain
from contradicting his wife and endeavor to soothe and
placate her ruffled temper, rather than to question her
words, even though wide of the truth, and that few are
so brave or so foolhardy as to chance the consequence
of the contrary conduct. Such a husband is classed in
the opinion as the ''average man,'' and the writer tells
us that the majority of this court who are deciding this
case are fashioned in the same mold; that they are unlike
the judge who stands afar from the ''firing line,'' think-
ing he is in no immediate danger, and dares to say that
a defendant, when charged with the unlawful taking of
a human life by his wife, should deny the charge. I will
not dispute what is so earnestly declared to be the
proper course for a wise husband, in his temperate deal-
ings with his irate spouse. Undoubtedly discreet con-
duct and soft words are advisable in such a situation. I
bow with respectful deference to the experience and
good judgment of the majority as to all these matters
conjugal.

However, I do not think that this wise policy, which
my brethren advise the good husband to follow, should
be permitted to interfere with, and in truth interrupt
completely, the operation of the rule touching the ad-
missibility of the overheard conversation in this case.

The testimony of the witnesses who overheard the conversation shows a very clear statement by the wife charging appellant with murder. One witness testified that she said:

"You know you killed that man and made me take it on myself, and if I was to do it over I would tell the people the truth about it, if you broke my neck."

Another witness stated her words as follows:

"Jim, you know you killed that man, there ain't no need of you telling me to hush."

It is also shown by the testimony that the couple were quarreling with each other. So appellant was not keeping silence in all matters during the conversation.

In addition to my view that the charges made by the wife called for a denial, I believe that it was for the jury, "in the light of all the circumstances, to say whether or not the silence or failure to deny amounts to an admission." Jones, on Evidence, par. 289.

Appellant may not have failed to reply to his wife's accusation because of his fear of her, as suggested by the reasoning in the majority opinion. He may not come up to the standard of "the average man" as a husband. It may be that he did not have the good judgment of such husband in deferring to his wife, recognizing her superiority, or, if you please, her majority vote in all matters domestic. Perhaps their manner of life was not conducive of the finer feelings which move the average man to bow obediently to his spouse. This may readily be believed when we notice their living place and surroundings; for it is in evidence that the room of moderate size, in which the murder was committed, contained three beds and was occupied by seven persons, one of whom was a man so drunk as to need the services of a physician.

Appellant may have thought that, as he and his wife were alone and no one in hearing, it was useless to deny what she already knew. Perhaps if he had known that

some one was overhearing the conversation he would have stoutly denied the charge. He was not under duress, unless it can be said he was bound by fear in his mind diseased with the horrid memory of the shedding of human blood.

This couple, in the quiet of the night, alone as they doubtless believed, with the common knowledge of the crime, conversed with each other concerning the guilt. there was probative value in what they said, the degree of which the jury could determine.