STATE v. LAWSON RANDALL.

(Filed 15 December, 1915.)

**1. Intoxicating Liquor—Search and Seizure—Constitutional Law.**

The "Search and Seizure Act" of 1913, making the possession of more than one gallon of spirituous liquor *prima facie* evidence of keeping it for sale in violation of law is constitutional and valid.

**2. Intoxicating Liquor—Husband and Wife—Evidence.**

Where the husband is on trial for violating the prohibition law, it is competent for a third person to testify as to the conversation between the defendant and his wife, with statements by the latter tending to fix the former with the guilt of the offense charged.

**3. Appeal and Error—Exceptions After Verdict.**

As to whether under the circumstances of this case it was improper or prejudicial to the defendant for the judge to have asked counsel if they desired to address the jury, *quære*. But exception thereto taken after verdict comes too late.

APPEAL by defendant from *Long, J.*, at July Term, 1915, of BUN-COMBE.

Criminal action for unlawfully selling liquor, commenced before the police court of the city of Asheville and carried by appeal of defendant to the Superior Court, where he was convicted and appealed to this Court from a judgment that he be imprisoned for eight months and work on the public roads.

*Attorney-General Bickett and Assistant Attorney-General Calvert for the State.*

*Jones & Williams and Douglass & Douglass for defendant.*

WALKER, J., after stating the case: The first exception challenges the validity of the provision of the search and seizure law, being Laws 1913, ch. 44, which makes the possession of more than one gallon of spirituous liquor *prima facie* evidence of keeping it for sale in violation of law. It is too late now to question the constitutionality of this clause of the statute. A similar provision was held to be valid in *S. v. Barrett*, 138 N. C., 630, which has been approved by this Court frequently since it was decided. As to the validity of these laws, the prohibition law of 1908, and the search and seizure law of 1913, ch. 44, we need only repeat

what we said recently in *S. v. Wilkerson,* 164 N. C., 431, and especially in *S. v. Russell,* 164 N. C., 482, as follows: "The prisoners counsel then fell back upon the position, which they defended with an able and learned argument, that the acts making the bare possession of a prescribed quantity of liquor *prima facie* evidence that it is kept for sale, is invalid, as being in violation of the constitutional rights of the citizen, and among others, for these reasons: (*a*) It is an assumption by the Legislature of judicial power, and, therefore, an invasion by it of the province assigned to another and coördinate branch or department of the Government. (*b*) It deprives the prisoner of the common-law presumption of innocence and of the full benefit of the doctrine of reasonable doubt; and, besides, it casts upon him the burden of showing his innocence. Without admitting that the act has the effect, in law, thus imputed to it, we must decline to enter upon a discussion of the questions thus pressed upon our attention, and for the very good reason that we have squarely decided against a similar contention in *S. v. Barrett,* 138 N. C., 630, and again in *S. v. Wilkerson, ante,* 431. In both cases, after an exhaustive consideration of the matter, we have deliberately decided that a like provision of the law (in the acts relating to Union County, and in the law of general application in the State, passed at the last regular session of the General Assembly, Laws 1913, ch. 44, the "Search and Seizure" law) are constitutional and valid, both as to their criminal feature and the rule of evidence established by them. In the *Barrett case* we sustained the 'Search and Seizure' law. The legal effect of those two decisions is so plain and unmistakable that there can be no fair or reasonable doubt of it. So far as this Court is concerned, they are valid laws of the State and will be enforced strictly and rigidly, according to the intention of the Legislature in passing them."

There could be no more pronounced and emphatic utterance in favor of the validity of those laws than we have employed in that case. See, also, *S. v. McDonald,* 152 N. C., 802.

The several exceptions directed against the competency of what was said by defendant's wife to him, and his conduct on the occasion, indicating his guilt, which was admitted by the court, are clearly without any merit. The evidence was to the effect that the officers had searched the premises of the prisoner and found there two kegs containing 4½ gallons and 2 quarts of liquor and two empty kegs. McIntosh brought up four bottles of corn liquor from the basement. Defendant's house was removed from the street, which was itself obscure, "being hardly a street." Defendant rented rooms in the house to nonresidents—negro men and women from Florida. At the time of the search the prisoner said that liquor had been sent there before, but was brought there by one of his boarders named Brown. The solicitor asked C. N. Lominac,

the witness who had given the foregoing testimony, the following ques-
tions, on redirect examination:

Q. Now, I will ask you what he said about the liquor in your presence,
or what was said by his wife in his presence?

The following question was first put to the witness by the court:

Q. You can say anything he, himself, said—what the defendant said.

A. Mr. McIntosh brought these two kegs of whiskey and set it down
on the porch, and Lawson Randall (defendant), said, "That is Brown's
whiskey," and his wife said, "What Brown?" When defendant said,
"That is Brown's whiskey," his wife said, "What Brown?" He said,
"The Brown downstairs." She replied, "You know there isn't any
Brown here. I have tried to get you to quit selling this liquor, and now
I am through. There is no Brown here at all," and Lawson just dried
up and walked away.

The defendant in apt time objected to all this testimony, on the
ground that it was the wife's testimony against her husband. The court
admitted it, and defendant excepted.

She said, "Now, I can't help it. You can just go," and she accused
him of selling liquor. "I have kept you in my house and I have kept
you up, and you never would do right, and now I am through."

The wife was not offered by the State as a witness and never testified
as such against defendant.

Defendant told his wife that she hadn't been there for some time.
In reply to that, she said, "Yes, sir, I have been working among white
folks and in white folks' kitchens to keep you up, and you came to me
for money the other day and told me you were going to get a job."

J. B. McIntosh testified: "I was a police officer and was present and
helped search the premises of the defendant. Found liquor downstairs
in the basement. It was in two kegs. I do not know how much kegs
held—some say 4½ gallons and some say 5." Witness identified the
two kegs. Found six in the front room, the northeast corner of the
building. Searched the front part and found three or four kegs. "I
think four empty kegs in the front room; that was the dining-room,
part of it. In the back room, which is in the northeast corner of the
building, back of the dresser I found one of these kegs with dust on it.
In the northwest part of the building is a hallway about 6 feet wide,
and behind that hallway is all sorts of junk, and in the bottom of a big
barrel I found the other keg, all covered up with trash. Randall said
it was not his, but a boarder's. He called the name of the boarder, and
I think it was Brown. Randall's wife was upstairs, and she was sitting
on the back porch crying. She broke down when I came out to them,
and made about the same statement as that related above, to wit, the
conversation between his wife and the defendant."

Question (by the solicitor) : What did she say? A. She told him that she had kept him there. Defendant said whiskey wasn't his.

Q. What was said to him by his wife in your presence. A. She told him that she had upheld him for quite a while and tried to help him get the home, and that she had worked like a poor negro and tried to keep him up; and she told him that he ran around and boot-legged and kept them down, and that she was through with him. He did not deny it.

Defendant's objection to all this evidence was overruled and he excepted.

We do not see why this testimony was not competent. Conversations between husband and wife are not privileged as confidential, so as to prevent a third person, who overheard them, from being competent as a witness to relate them to the jury. *S. v. Wallace,* 162 N. C., 622; 2 Chamberlayne on Evidence, sec. 1430, p. 2339; Wharton on Criminal Evidence, sec. 398; 40 Cyc., 2359; 6 Enc. of Evidence, 907.

In the *Wallace case Justice Allen* has, with his usual diligent and discriminating research, given us the pith of the learning upon this subject. He there says: "The authorities seem to be uniform that a third person may testify to an oral communication between husband and wife, although his presence was not known; but there is much diversity of opinion as to the right to introduce a writing from one to the other in the hands of a third person. The cases are collected in the notes to *Gross v. State,* 33 L. R. A. (N. S.), 478, and *Hammons v. State,* 3 A. and E. Anno. Cases, 915. It is difficult to find a satisfactory reason for the distinction. The rule of the common law is based on the confidential relationship existing between husband and wife, and the importance to the public of maintaining this relationship, deeming it wiser and more conducive to the public interest for some particular evidence to be suppressed than to require the husband or wife to disclose a communication between them, as to do so 'might be a cause of implacable discord and dissension between the husband and wife, and a means of great inconvenience.' *S. v. Brittain,* 117 N. C., 785. But the inhibition is as to the husband or wife, and not to a third person, and if the communication by the husband is in writing, and is procured by a third person, without the consent or privity of the wife, the reason for the exclusion of communications at common law no longer exists. In our opinion, the rule is stated correctly in Whar. Cr. Ev., sec. 398: 'Confidential communications between husband and wife are so far privileged that the law refuses to permit either to be interrogated as to what occurred in their confidential intercourse during their marital relations, covering, therefore, admissions by silence as well as admissions by words. The privilege, however, is personal to the parties; a third person who happened to overhear a confidential conversation between husband and wife may be examined as to such conversation. A letter, also, written confidentially by husband

to wife, is admissible against the husband, when brought into court by a third party.'" No authority could have been adduced which more closely applies to the facts of this case.

The same rule of evidence was applied in *Toole v. Toole,* 109 N. C., 615, where the plaintiff, who had charged his wife with adultery, one Palmer being corespondent, was permitted to show by a third person, as a witness, a conversation between himself and wife in which he had forbidden her to go with Palmer, or where he was. The evidence was admitted below by the presiding judge to show the adulterous intimacy; to contradict a former witness who had testified as to friendly relations between Palmer and the husband and as sustaining plaintiff's statement that the adulterous intercourse was without his consent or connivance. This Court held the evidence competent and not inhibited by The Code, secs. 588, 1351, as declarations of the wife or the husband. *Chief Justice Merrimon,* in closing the opinion of the Court, said: "The evidence was in no proper sense that of the plaintiff or the defendant, and therefore incompetent under the statute (Code, secs. 588, 1351). It was evidence of a third person, and competent in the aspects of the case above pointed out." That decision was strongly approved in the same case on a second appeal (112 N. C., 152). *Justice Avery,* in that case, said: "Confidential communications between husband and wife are privileged, and neither is compelled to divulge them upon the witness stand; but the testimony of Lillie Graham that she saw Palmer in the bedroom of the defendant, and at the trestle in company with her, was competent in itself, and when considered in connection with the previous declaration of the plaintiff, made to defendant in the presence of the witness, as to her disregard of his express wishes, becomes material, because it makes her conduct appear much more suspicious. The language used by the husband about a week before, viz., 'Laura, I have told you before, and tell you again, I don't want to catch Palmer at my house any more,' was not a confidential communication between husband and wife, but a command uttered in the presence of another, the disregard of which tended to prove her infatuation for Palmer. If, then, we should concede that confidential communications between husband and wife are not simply privileged as to them, but cannot be proven even by a third person, and though neither husband nor wife is competent or compellable to testify directly as to the adulterous acts charged, according to a proper interpretation of the statute (The Code, sec. 588) this was not such a communication, and being offered in connection with her conduct and proven by a third person, was competent. But similar testimony was declared, when this case was heard on the former appeal, *Toole v. Toole,* 109 N. C., 615, to be competent as tending to show adulterous intercourse as well as for the purpose of contradicting the witness, who

testified that plaintiff had employed Palmer to stay with his family. It is therefore needless to discuss this point at greater length."

And mind you, that was a divorce suit, where the Legislature has been so particular to safeguard confidential communications between husband and wife as well as the sacredness of the marriage tie and the preservation of marital confidence and harmony.

In *S. v. Record,* 151 N. C., 695, it was held that while the wife is not a competent witness against her husband in the trial of an indictment, her declarations in his presence, of a nature and made under circumstances naturally and reasonably calling for a reply from him, if untrue, and concerning which he remained silent, are competent when tending to show his guilt of the offense charged. *People v. McRea,* 32 Cal., 100; *Richardson v. State,* 82 Wisc., 172; Abbott's Cr. Trial Briefs, p. 561, sec. 284; *Rex v. Bartlett,* 7 Car. & P., 832; *Rex v. Smithers,* 6 Car. & P., 332; *S. v. Bowman,* 80 N. C., 432; *S. v. Burton,* 94 N. C., 947. Conversations between husband and wife about the sale of liquor by each were admitted in *S. v. Seahorn,* 166 N. C., 373, without objection on the ground here taken, though strenuously opposed for other reasons. We have held that the law does not exclude the testimony of the husband, in an action brought by him against another for criminal conversation and the alienation of his wife's affections, as to the conduct of the latter tending to show her guilt, because he does not testify against her, she not being a party to the suit. *Powell v. Strickland,* 163 N. C., 393. So here the wife is not testifying, as a witness, against her husband, which is the converse of that case.

The last exception is without any merit. When the court asked counsel whether they desired to address the jury, if the question was improper or prejudicial, and we are unable to see that it was under the circumstances, defendant should have objected at once, and not have waited until he could take a chance on the verdict, and then, after he had lost by his conviction, object for the first time. He who would save his rights must be reasonably prompt and diligent in asserting them. It was too late after verdict to enter an objection, if it would have been good had it been made in due time. *S. v. Tyson,* 133 N. C., 692; *S. v. Murray,* 139 N. C., 540; *Alley v. Howell,* 141 N. C., 113; *S. v. Houston,* 155 N. C., 432.

We have given careful consideration to all the exceptions, and find that no error was committed at the trial.

No error.