### STATE v. TOM McKINNEY.

(Filed 6 March, 1918.)

**1. Husband and Wife—Criminal Law—Evidence—Witness—Third Party.**

A witness may testify to a conversation between husband and wife, on the trial of the former for a criminal offense, tending to incriminate him occurring at the time of the arrest and in the presence and hearing of the witness.

**2. Same—Spirituous Liquors—Sale.**

Where there is sufficient evidence of the possession of more than a gallon of spirituous liquor in the defendant's possession, it is competent for a witness to testify that in his presence at the time of the arrest the prisoner's wife said to the prisoner that she had repeatedly told him about selling whiskey, to which he told her to shut her mouth, "he would attend to his own business," the reply being in the nature of a rebuke and not a denial and evidence of an unlawful purpose of sale.

**3. Evidence—Character—Voluntary Qualifications.**

A character witness may voluntarily qualify his evidence as to the character of a party, as in this case, "Yes, it is bad for selling liquor," the offense for which he was being tried.

INDICTMENT, tried before *Calvert, J.,* and a jury, at August Term, 1917, of PITT. Defendant was convicted and appealed.

*Attorney-General Manning and Assistant Attorney-General Sykes for the State.*

*Julius Brown and R. T. Martin for defendant.*

WALKER, J. The charge was that the defendant had in his possession for the purpose of sale, and in violation of the statute, more than one gallon of spirituous liquor, and upon his conviction in the Superior

Court he was sentenced to eight months imprisonment in the county jail and to be assigned to work on the public roads.

Appellant has raised two questions only.

1. E. L. Hobgood testified: "I am constable of Farmville Township and I obtained a search warrant to search Tom McKinney's house. I found in his house six quarts of bottled in bond whiskey. Three quarts was under the bed and three quarts was inside of the folding couch. I also found some empty bottles in and around the house. I also found some cork stoppers in a drawer of a washstand, some of the stoppers were new and some old. When we arrested Tom his wife was present and on her seeing Tom arrested she made a statement." Question: "What did Tom McKinney's wife say to him when he was arrested and in the presence of you?" (Objection by the defendant; overruled; and defendant excepted.) Answer: "She said to him, 'I have told you a thousand times about selling whiskey and that you would get caught.' Tom said to her, 'You hush your damned mouth. I will attend to my own business.'" Defendant moved to strike out the answer; motion overruled; and defendant excepted.

There was other evidence of a like kind. The testimony was competent upon the question whether the defendant was keeping the liquor, which the officer found in his possession, for sale. The answer was not a denial of guilt, as contended by the defendant, but was rather in the nature of a confession. He did not say that he was not guilty, or take issue with the assertion of his wife, but, on the contrary, rebuked or chided her for having divulged to the officer his previous illegal traffic. The jury might well have found that when he ordered her "to hush her damned mouth," he meant that she should stop accusing him of having violated the law by selling liquor and keeping it for sale. When she said to him, "I have told you a thousand times about selling liquor and that you would get caught," she meant that he had been caught with liquor in his possession for sale, as he was being arrested for that particular offense. What they both said, when considered together, bore directly upon the issue, as it referred to his being engaged in the illegal traffic of selling and necessarily having liquor for sale.

We have held that a third person may testify to an oral communication between husband and wife, although he was not known to be present, and it was said that the authorities seem to be uniform to this effect. *S. v. Wallace,* 162 N. C., 629. To the same effect is 1 Wharton's Cr. Evidence, par. 398, which is as follows: "Confidential communications between husband and wife are so far privileged that the law refuses either to be interrogated as to what occurred in their confidential intercourse during their marital relations, covering, therefore, admissions by silence as well as admission by words. The privilege, however,

50—175

is personal to the parties. A third person who happened to hear a confidential conversation between husband and wife may be examined as to such conversation. . . . The privilege also extends only to confidential communications and does not cover topics incident to general intercourse."

The point was directly involved in *S. v. Randall,* 170 N. C., 757. There the defendant was indicted for a violation of the prohibition law, and a witness testified: Q. "What was said to him by his wife in your presence?" A. "She told him that she had upheld him for quite a while and tried to help him get the home, and that she had worked like a poor negro and tried to keep him up; and she told him that he ran around and boot-legged and kept them down, and that she was through with him. He did not deny it." Defendant's objection to all this evidence was overruled and he excepted. The Court said: "We do not see why this testimony was not competent. Conversations between husband and wife are not privileged as confidential, so as to prevent a third person, who overheard them, from being competent as a witness to relate them to the jury," citing *S. v. Wallace,* 162 N. C., 622; 2 Chamberlayne on Evidence, sec. 1430, p. 2339; Wharton on Cr. Evidence, sec. 398; 40 Cyc., 2359; 6 Enc. Evidence, 907. These authorities would seem to fully and effectually answer this objection, but other cases bearing more or less upon the point may be added, *S. v. Seahorn,* 166 N. C., 373; *S. v. Record,* 151 N. C., 695; *Powell v. Strickland,* 163 N. C., 393; *S. v. Bowman,* 80 N. C., 432; *S. v. Burton,* 94 N. C., 947.

2. The other exception is that the State offered Andrew Moore, as a witness to the character of defendant, the latter having testified in his own behalf. He was asked if he knew the general reputation of defendant, to which he replied: "Yes, it is bad—for selling liquor." The same kind of answer has been held admissible in *S. v. Hairston,* 121 N. C., 579, where the Court said: "A party introducing a witness as to character can only prove the general character of the person asked about. The witness, of his own motion, may say, in what respect it is good or bad. He may have to do this in justice to himself—in other words, to tell the truth; as for instance, that the party spoken of had a general good character for some things and a general bad character for other things; the witness could not truthfully say it was bad or that it was good, without qualification; or the opposite party may, on cross-examination, test the witness as to what it is bad for or what it is good for," citing *S. v. Laxton,* 76 N. C., 216; *S. v. Daniel,* 87 N. C., 507. See, also, *S. v. Wilson,* 158 N. C., 599, 601, where *S. v. Hairston, supra,* is approved, and *S. v. Efler,* 85 N. C., 585. Following *S. v. Hairston, supra,* and *S. v. Wilson, supra,* we must overrule this objection.

No error.