### STATE v. CHEATAM EVANS.

(Filed 4 March, 1925.)

**Appeal and Error—Evidence—Identity of Prisoner—Prejudice—Harmless Error.**

Upon this trial for the capital offense of murder in the first degree, the evidence was sufficient to convict of the crime and was conflicting as to whether the defendant continued after reaching his home to drive the deceased in his automobile to the place of the occurrence, or whether another in the automobile did so and committed the offense: *Held,* under this and other evidence in the case, it was not prejudicial or reversible error to the defendant to permit a witness to testify that the defendant drove in his automobile the deceased to the place of the homicide. As to whether this testimony would be error otherwise, *quere?*

APPEAL by defendant from *Lyon, J.,* at October Special Term, 1924, of NASH.

Criminal prosecution tried upon an indictment charging the defendant with murder in the first degree. From an adverse verdict, finding the defendant guilty of the capital felony as charged in the bill of indictment, and judgment of death pronounced thereon, he appeals, assigning errors.

*Attorney-General Brummitt and Assistant Attorney-General Nash
for the State.*
  *F. S. Spruill, Jr., for defendant.*

STACY, J. On 26 July, 1924, about 8:00 or 8:30 p. m., A. L. Joyner,
a jitney driver in the town of Hollister, Halifax County, was employed
to make a trip down into Nash County where the defendant lives. He
had in his car Tom Lee, Ernest Lee, and the defendant, Cheatam Evans.
Soon after arriving at the defendant's home, the driver of the car, A. L.
Joyner, was shot twice and almost instantly killed. The State contended
that the deceased was shot and killed by the defendant. The defense,
on the other hand, contended that Ernest Lee did the shooting, while
the defendant was in his house and away from the scene of the homicide.
There was evidence tending to support the two contentions, and the
jury took the State's view of the matter.

It was in evidence that the deceased was shot with a gun belonging
to the defendant; that the car with Joyner's body in it, was driven to
Davis' Bridge, some distance away, where the bloody foot-mat of the
car was thrown into the creek; that the car was driven from there
to another creek where Joyner's body was thrown into the water; that
a watch taken from the defendant was Joyner's watch, and when
Joyner's body was found, his watch chain was in the button hole of his
shirt and that a knife taken from the defendant was similar to one
owned by Joyner. Early in the morning, following the night of the
homicide, the defendant came to the home of Washington Lynch, driving
Joyner's automobile, and wanted to borrow some license plates. There
was other evidence tending to show the defendant's guilt.

The defendant, a witness in his own behalf, testified that he was
invited by Tom and Ernest Lee to ride with them in Joyner's car
as they were going down into Nash County, by the defendant's home.
This he consented to do, and upon arriving at his house, they all
stopped for water. Taking advantage of the delay, the defendant went
into his house to get supper; soon after he began eating his evening
meal, Ernest Lee came to the door and wanted to borrow his gun,
saying that he (Ernest Lee), Tom Lee and Joyner were going down
the road to get some whiskey and that they might need it before they
got back. Ernest Lee took the gun and went out to the car. In a very
short time, the defendant heard two shots; he ran to the door and saw
Ernest Lee with the gun. Ernest Lee told the defendant that he shot
Joyner because he would not carry him and Tom Lee to get the whiskey.
Defendant further testified that after the killing, he was forced by
Ernest Lee, under threats of death, to get in the car and go with them;
that they finally let him out of the car near Hollister after repeatedly

S. *v.* EVANS.

threatening him with death if he dared tell what had happened. The jury rejected this view of the evidence.

In corroboration of the State's evidence and in support of its theory of the case, the prosecution undertook to show that the deceased was employed by the defendant to make the trip in question, and not by the Lee boys as the defendant contended. The admission of the following evidence, looking to that end and given by the witness, G. A. McClelland, forms the basis of one of the defendant's exceptive assignments of error:

"I talked to Mr. Joyner just before he left Hollister and he told me—" (Objection by defendant; overruled; exception) "Mr. Joyner told me that Evans had employed him. I didn't hear them say anything to each other. I didn't hear any conversation between the dead man, Arthur Joyner, and Evans that night."

Q. "I ask you if you heard Joyner say anything to Evans?"

A. "No, sir."

Q. "I ask you this question: Did Mr. Joyner say anything to you in Evans' presence?"

(Objection by defendant; overruled; exception.)

A. "Evans was present so he could hear what Joyner said to me. He told me that Evans had employed him to take him to his home to get his wife. That last remark was made just before he left. There was no conversation between Evans and Joyner in my presence. He (Joyner) was talking to me when this remark happened to be made."

It is the position of the defendant that this conversation, had between the witness and the deceased, although in the presence and hearing of the defendant, is purely hearsay and should not have been admitted in evidence against him. The defendant says that no crime had been committed at that time; that it was an immaterial circumstance, and that he was under no obligation to deny it. The defendant's position is not without force, if it be conceded the occasion was such as to call for no expression from him; and, if this were determinative of the case, a very serious question would be presented. Silence alone, in the hearing of a statement, is not what makes it evidence of probative value, but it is in connection with some circumstance or significant conduct on the part of the listener that gives the statement evidentiary weight. *S. v. Record,* 151 N. C., 695; *S. v. Burton,* 94 N. C., 947; *S. v. Bowman,* 80 N. C., 432; 2 Chamberlayne on Evidence, sec. 1418. "Where the *occasion* is such that a person is not called upon or expected to speak, no statement made in his presence can be used against him on the ground of his presumed assent from his silence"—*Ashe, J.,* in *Guy v. Manuel,* 89 N. C., p. 86.

Here, however, the evidence in question would seem to be competent as tending to show the presence of the defendant in the car, which

had not been admitted at the time it was offered. The matter spoken of took place at the beginning of the trip, which subsequently proved fatal, and really formed a part of it. But admitted or rejected, true or untrue, this evidence was not decisive of the case, and formed no necessary link in the State's chain of circumstances. It is thought that its admission, in any event, should not be held for reversible error. This same witness also testified that he saw the defendant and the deceased leaving Hollister together in Joyner's car about eight o'clock that night.

A careful perusal of the record leaves us with the impression that no reversible error was committed on the trial. The verdict and judgment, therefore, will be upheld.

No error.