STACY, C. J., dissenting; BROGDEN, J., concurs in dissent.
The above-named defendants were tried on a bill of indictment charging an assault with intent to kill one Bostick Williams. All three of defendants were convicted of assault with a deadly weapon and the defendant, Simon Portee, appealed from such conviction and the judgment of the court in which each of the defendants was sentenced to serve eighteen months on the county roads of Richmond County. The alleged assault was committed on 21 July, 1929.
Lawyer Tucker did not appeal. Sam Burno and Simon Portee appealed. See companion case, where no error was found in appeal of Sam Burno. Some of the assignments of error on this record are similar to those in the Burno case, and, being there considered, reference is made to that case.
The prosecuting witness, Bostic Williams, testified, in part: "I know the defendants, having known Burno about eight years; Simon Portee eight or ten years, and Lawyer Tucker four or five years. Burno was living in Hamlet but was running a drug store in Southern Pines. Portee and Tucker lived near me in the North Yard; no one lived nearer than 400 or 500 yards to me. . . . On Friday, while I was at home about midnight the defendants came to my house; they broke the door open and rushed right in on me. They all had sticks and they *Page 143 
began to beat me, and I said, `What is the matter; what have I done ?' and they did not answer, but each one hit me a lick apiece. I was so unconscious I could hear them say something but could not understand it. They hit me as many as three times and I do not know how many more. These are the scars on my head from the licks. I did not come to myself until some time Monday, and when I did, I was lying across my bed with my clothes on. . . . I was laid up between seven and eight weeks as near as I can remember."
The defendant, Simon Portee, denied his guilt and testified, in part: "I live in Hamlet, N.C. Been there between 25 and 30 years. I live in the North Yard. I was home on Saturday night, 21 July; I got home at 11:30. When I went home at 11:30, the 11:30 whistle blew when I got out of the car and started in the house. They have a whistle in Hamlet that blows at 11:30 — the round-house whistle. I am employed by the Seaboard. It was around 12 when I retired. My wife and children were at home that night. I don't know what time my wife retired. She got up when the baby got sick and she said she stayed up until along about 1 or 1:30. . . . I did not leave my house that night from the time I retired until I got up next morning. I heard Bostick Williams say on the stand yesterday that I hit him with some sort of stick. I never thought of such a thing, much less hit him. I would not hit him for anything. Old Bostick knows I am a friend to him and have been since he came in town. . . . (Cross-examination): The officers come on Sunday or Monday and asked me where I was on that Saturday night, and I told them I got home at 11:30. My wife did not accuse me in the presence of the officers of having gone to Rockingham with a woman. She did not tell them in my presence that I did not get home until 1:30. I did not tell the officers I took a woman to Rockingham that night."
Officer B.L. Finch, when recalled, testified, in part: "Q. When you went to investigate the whereabouts of Simon Portee, on the night this man was beat up, where did you find him ? A. I found him at home the first time. Q. Did you have a talk with him at home in the presence of his wife? A. I first talked to Simon and he told me he got home at 11 or something like that. His wife come up and wanted to know what was the trouble, and I asked her what time Simon got home, in his presence. (Simon objects.) (Offered for the purpose of contradicting Simon.) By Mr. Sedberry: Objection, as anything that his wife might have said is privileged and is not competent evidence against him. By the solicitor: I am offering it to contradict him. I am asking you first, what did Simon tell you, and all that he told you? I ask you for the conversation you had with Simon Portee and his wife when they were both together as to his whereabouts on the night this man was beat up. By *Page 144 
Mr. Sedberry: Objection to anything his wife said except in so far as it impeaches her. (Objection overruled; exception.) By the court: Was he present ? A. Yes. (Objection; overruled; exception.) A. Simon said he got in about 11 o'clock and his wife come out to the car where Chief Miller and myself was, and I asked her — and he was present, standing there — and she said it was late in the morning after midnight, and Simon said he did carry a woman to Rockingham and was a little late getting back. And she told him if it was not for that old automobile he would not be in trouble; that that was keeping him out late at night. (Motion to strike out that part of the answer wherein witness has stated things that contradicted Victoria Portee unless it is limited to the impeachment of the witness. Objection overruled, and the defendant, Portee, excepts.)"
The defendant Portee offers in evidence the statement made by the prosecuting witness, Bostick Williams, which is read to the jury, and which is as follows. "I realize from what the doctor says that I may die. Around two o'clock, Sunday a.m., 21 July, 1929, Sam Burno, Simon Portee and James Tucker come to my house and broke the door open and Sam Burno hit me first, James Tucker hit me with a board, Sam Burno said that he would bring me down."
The defendant duly assigned errors to the exceptions above set forth and appealed to the Supreme Court.
Officer B.L. Finch, a witness for the State, had testified previously. The State had rested, then the defendant, Simon Portee, testified in his own behalf and, among other witnesses testifying for him, was his wife, Victoria Portee. Thereupon, Finch was recalled. He proceeded to testify as to a conversation he had with Simon as to when he had gone home the night of the assault. That evidence was as follows: "Simon said he got in about 11 o'clock and his wife came out to the car where Chief Miller and myself was and I asked her — he was present, standing there — and she said, `It was late in the morning — after midnight,' and Simon said he did carry a woman to Rockingham and was a little late getting back. And she told him if it was not for that old automobile, he would not be in trouble — that that was keeping him out late at night."
The question arises was the silence of Simon Portee, under the facts and circumstances above set forth, some evidence to go to the jury to contradict him. We think the evidence competent; the probative force was for the jury. *Page 145 
In Underhill's Crim. Ev. (3d ed.), part sec. 208, it is said: "The silence of the accused as regards statements in his hearing which implicate him directly or indirectly may be proved with the statements, and from his acquiescence the jury may infer that the statements are true and that they prove his guilt. Silence is assent as well as consent, and may, where a direct and specific accusation of crime is made, be regarded under some circumstances as a quasi-confession. An innocent person will at once naturally and emphatically repel any accusation of crime, as a matter of self-preservation and self-defense, and as a precaution against prejudicing himself. . . . For the silence to be equivalent to a confession, it must be shown that the accused heard, understood the specific charge against him, and that he heard it under circumstances not only permitting him, but calling on him for a denial, taking into consideration all the circumstances and the persons who were present." Part sec. 209: "The silence of the accused may spring from such a variety of motives, some of which may be consistent with innocence, that silence alone is very slight evidence of guilt; and, aside from the inference which may arise from the attendant circumstances, should be received with caution as proof of guilt."
In Guy v. Manuel, 89 N.C. at p. 86, Ashe, J., speaking for the Court, said: "To make the statements of others evidence against one on the ground of his implied admission of their truth by silent acquiescence, they must be made on an occasion when a reply from him might be properly expected. Taylor on Ev., sec. 738; S. v. Suggs, post, 527. But where the occasion is such that a person is not called upon or expected to speak, no statements made in his presence can be used against him on the ground of his presumed assent from his silence."
S. v. Suggs, 89 N.C. at p. 530: "Where a statement is made, either to a man or within his hearing, that he was concerned in the commission of a crime, to which he makes no reply, the natural inference is that the imputation is well founded, or he would have repelled it. Guy v. Manuel,ante, 83; Whar. Ev., sec. 1136, and cases there cited."
In S. v. Martin, 182 N.C. at p. 850-1, is the following: "The testimony of this witness as to statements made by the woman in the presence of the defendant was properly admitted. True, the witness said that the defendant had been drinking, and was sitting in a corner of the room when the statements were made; but he testified also that the defendant, while near enough to the woman to hear her remarks, occasionally said something himself, and that the witness, although not positive, thought the defendant was awake. It was the province of the jury to determine from the evidence whether the woman's statements were made in the hearing as well as in the presence of the defendant, whether they were understood by him, and whether he denied them or *Page 146 
remained silent. S. v. Bowman, 80 N.C. 437; S. v. Crockett, 82 N.C. 599;S. v. Burton, 94 N.C. 948; S. v. Randall, 170 N.C. 762."
In S. v. Riley, 188 N.C. at p. 73-4, we find: "Among other evidence admitted as against Riley and Steelman, it was shown that the two had the stolen car at the home of Riley's father, who lived near Pleasant Garden in said county, on Monday 9th, or Tuesday 10 December, 1923, and that defendant Steelman had there falsely introduced himself as a Mr. Brown of High Point. This testimony being from the police officer, S. J. Garnet, and John T. Carter, an agent, who testified that Steelman, having denied knowing anything about the stolen car, at the request of Mr. J.H. Riley, the latter was taken to the jail to see if he knew Steelman and could identify him as being the man who was with his son, had the car at the home of the witness, and on the meeting Mr. Riley, the father, said: `Yes, sir, you are the man that was at my house and introduced yourself as Brown from High Point.' True, this was a declaration of Riley, but being made in the presence of Steelman, who made no denial, it became a fact in evidence relevant to the issue. S. v. Jackson, 150 N.C. 831."
In Comrs. v. Brown, 131 Mass. 69, it is said: "A statement, made in the presence of a defendant, to which no reply is made, is not admissible against him unless it appears that he was at liberty to make a reply, and that the statement was made by such person and under such circumstances as naturally to call for a reply, unless he intends to admit it; but if he makes a reply, wholly or partially admitting the truth of the facts stated, both the statement and the reply are competent evidence," citing Comrs. v.Kennedy, 12 Metcalf (Mass.), 235. Boney v. Boney, 161 N.C. 614; S. v.Walton, 172 N.C. 931; S. v. Pitts, 177 N.C. 543; S. v. Willoughby,180 N.C. 676; S. v. Butler, 185 N.C. 625; S. v. Evans, 189 N.C. 233.
We think in the present case the occasion called for the defendant to speak, his silence in not speaking was some evidence for the jury to consider, the probative force was for them.
Although the wife is not a competent witness against her husband, in a trial of a criminal action, her declarations made in his presence and in the presence of a third party, and naturally calling for some action or reply, if untrue, he remaining silent, are admissible in evidence. The defendant's exception and assignment of error to the admission of the testimony was on the ground that it was, in effect, using the wife as a witness against her husband, contrary to the statute, is untenable.
In S. v. Graham, 194 N.C. at p. 466-7, Adams, J., speaking for a unanimous Court, said: "Mrs. Doss Bowen was permitted to testify that a short time before the homicide the prisoner took a pistol from his pocket in her presence and in the presence of his wife, whereupon the *Page 147 
latter addressing her husband remarked, `You broke in my trunk and got it.' This was objected to; but the objection was properly overruled. Although the wife is not a competent witness against the husband in the trial of a criminal action, her declarations made in his presence, and in the presence of a third party, and naturally calling for some action or reply if untrue, he remaining silent, are admissible in evidence. S. v. Record, 151 N.C. 695;S. v. Randall, 170 N.C. 757; S. v. McKinney, 175 N.C. 784; S. v.Evans, 189 N.C. 233."
For the reasons given, we find
No error.