STATE v. JOHN FREEMAN AND DOCK CAUDILL.

(Filed 12 June, 1929.)

1. **Criminal Law L g—Upon appeal from conviction in a criminal case the Supreme Court is confined to matters of law or legal inference.**

   The Supreme Court is ordinarily confined to matters of law or legal inference on appeal from a judgment upon a verdict of guilty in a criminal action where the evidence is conflicting upon the question of the defendant's guilt or innocence. Const., Art. IV, sec. 8.

2. **Criminal Law G j—Testimony of accomplice should be scrutinized, but is competent evidence.**

   Upon the trial for arson under the provisions of C. S., 4238, testimony of an accomplice that the two defendants set fire to a dwelling at night in which the prosecuting witness was sleeping is competent, but should be scrutinized by the jury and not accepted as evidence unless they find beyond a reasonable doubt that it is true, and under correct instructions, it is within the province of the jury to accept it in part and reject it in part, and to convict one of the defendants and acquit the other upon conflicting evidence.

3. **Criminal Law G q—Testimony of witness as to communication between husband and wife made in his presence is competent.**

   Testimony of a witness that at the time of the arrest of the defendant, by the officers of the law, his wife was present and said to him: "I told you that you would get into it if you did not stay with me like I wanted you to," to which he replied: "hush," is not a confidential communication between husband and wife within the contemplation of C. S., 1802, and may be testified to by the witness who was present and heard it, and is some evidence of guilt in connection with the other evidence in the case.

STACY, C. J., dissenting; BROGDEN, J., dissenting opinion.

APPEAL by defendant, John Freeman, from *Harwood, Special Judge,* at February Term, 1929, of YADKIN. No error.

Criminal action in which the above-named defendants were tried upon their plea of not guilty to an indictment charging them with arson.

There was a verdict that defendant, John Freeman, is guilty, and that defendant, Dock Caudill, is not guilty, of the felony and arson charged in the indictment.

From judgment that he suffer death, as prescribed by statute (C. S., 4238) the defendant, John Freeman, appealed to the Supreme Court.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*S. E. Edwards, W. Reade Johnson and John C. Wallace for defendant.*

CONNOR, J. During the night of 23 July, 1928, the dwelling-house and barn of C. F. Sofley, in Yadkin County, North Carolina, were de-

stroyed by fire; at the same time the garage, located on his premises, near the dwelling-house and barn, was damaged by fire. Weeds growing near the garage were burned; the weather-boarding and roof of the garage were scorched, but the building was not destroyed.

There was evidence on behalf of the State tending to show that the fires which destroyed the dwelling-house and barn, and damaged the garage, were separate and distinct, and that each of said fires was of incendiary origin. The fires were first discovered by C. F. Sofley between 11 and 12 o'clock at night. He and his family had gone to bed at about 9 o'clock and were asleep when they were awakened by the fire which destroyed their home. The barn and garage were then on fire and burning.

There was evidence tending to show that gasoline had been used to start each of the fires. Witnesses for the State testified that they saw three men walking on the highway a short distance from Sofley's home on the night of the fire, about 30 minutes before the fires were discovered. These men pulled their caps down over their eyes and turned their heads as the witnesses, riding in an automobile, passed them. Neither of witnesses recognized the men, or was able to identify them or either of them. One of the witnesses was of the opinion that all three were white men.

Tracks near the barn and the garage were discovered the morning after the fire. Some of these tracks led away from the premises in the general direction of the home of Jack Hunt, which is at a distance of about a mile from the home of C. F. Sofley. A short time before the fire Jack Hunt had been arrested on a warrant, procured upon information furnished by C. F. Sofley, charging him with the unlawful sale of intoxicating liquor. Shoes were found at his home which fitted some of the tracks which were discovered on the premises of C. F. Sofley. Jack Hunt was arrested and at a previous term of the court had entered a plea of guilty to house-burning. He had been sentenced to serve a term of ten years in the State's prison upon this plea, and is now serving this sentence.

Upon the trial of the defendants in this action the State relied upon the testimony of Jack Hunt as evidence to sustain its contention that defendant, John Freeman, set fire to the dwelling-house; that defendant, Dock Caudill, set fire to the barn, and that the witness, Jack Hunt, set fire to the garage, and that they had set fire to the buildings pursuant to a conspiracy entered into by and between them to burn said buildings because C. F. Sofley had caused the arrest of Jack Hunt for selling liquor. The testimony of Jack Hunt, if believed, was amply sufficient as evidence to sustain the contentions of the State that both the defendants are guilty as charged in the indictment.

There was evidence of facts and circumstances which tended to support the testimony of Jack Hunt. Each of the defendants offered evidence in contradiction of the testimony of Jack Hunt. The evidence for each of the defendants tended to sustain his contention that he had not entered into a conspiracy with Jack Hunt to burn the buildings of C. F. Sofley, as testified by him, and that he was elsewhere when the buildings were burned.

All the evidence was submitted to the jury under instructions which are free from error. The court instructed the jury that they should consider the fact as testified by him that Jack Hunt was an accomplice of the defendants in the commission of the crime for which they were on trial, and that for this reason they should scrutinize his testimony with great care and not accept such testimony as evidence unless they found beyond a reasonable doubt that it was true. The instruction in this regard was in full compliance with the principles stated in *S. v. Ashburn*, 187 N. C., 717, 122 S. E., 833. It was within the province of the jury to accept the testimony of Jack Hunt, in part, and to reject it, in part, and thus to convict the defendant, John Freeman, and to acquit the defendant, Dock Caudill. In the absence of error in the decisions of the trial court upon matters of law or legal inference, this Court is ordinarily without jurisdiction to grant a new trial to the defendant, John Freeman, upon his appeal from the judgment which is supported by the verdict. Constitution of N. C., Art., IV, sec. 8. The jury believed the evidence offered by the defendant, Dock Caudill, tending to establish his defense based upon an alibi, and rejected the evidence offered by the defendant, John Freeman, to establish a similar defense. This was within their province, and the judgment and verdict cannot be set aside and a new trial granted by this Court, in the exercise of its appellate jurisdiction, for the reason that we find no error in the record.

The defendant, John Freeman was at his home when he was arrested on a warrant charging him with arson. His wife was present at the time of the arrest, and in the presence of the officers said to him, "I told you, John, that you would get into it if you did not stay with me like I wanted you to do." He replied to her, "Hush."

Defendant's exception to the refusal of the court to sustain his objection to this evidence cannot be sustained. The objection was properly overruled upon the authority of *S. v. Randall*, 170 N. C., 757, 87 S. E., 227. In the opinion in that case it is said that conversations between husband and wife are not privileged as confidential, so as to prevent a third person who overheard them, from relating them to the jury. The statute in this State (C. S., 1802), which provides that no husband or wife shall be compellable to disclose a confidential communication made

by one to the other during their marriage, and that neither shall be competent or compellable to give evidence against the other in a criminal action, has no application, for the reason that the conversation between defendant and his wife was not a confidential communication, and for the further reason that the wife did not undertake to give evidence against her husband as in *S. v. Aswell,* 193 N. C., 399, 137 S. E., 174, nor was she under cross-examination as a witness for her husband as in *S. v. Adams,* 193 N. C., 581, 137 S. E., 657. Defendant's reply to the remark of his wife to him, made in the presence of the officers, was competent as evidence against him. The remark of his wife, taken together with his reply to her, was properly admitted as evidence. *S. v. McKinney,* 175 N. C., 784, 95 S. E., 162.

The evidence upon the trial of this case was amply sufficient to sustain the conviction of both defendants and of the witness, Jack Hunt, for arson. Jack Hunt upon an indictment for arson tendered a plea of guilty of house-burning, which was accepted by the State. He is now serving a term in the State's prison. Defendant, Dock Caudill, was acquitted by the jury, and he has been discharged. Defendant, John Freeman, was convicted, and the judgment that he suffer death, from which he appealed, must be affirmed, for we find no error of law in his trial.

No error.

STACY, C. J., dissenting.
BROGDEN, J., dissenting opinion.

BROGDEN, J., dissenting: I concede that this case is written in accordance with the precedents, but I do not concur in the reasoning of the precedents. C. S., 1802 provides in substance that the wife is not competent "to give evidence" against her husband. It is asserted, however, in the decisions that if the wife makes a declaration in the presence of her husband and a third party, she cannot go upon the witness stand and repeat her declaration because this would be giving evidence, but the third party can repeat to the jury her identical words and this is not giving evidence by her, although the evidence so admitted and used to convict is the exact language used by the wife. The evidence then is not the language repeated by the wife, but the repetition of it by some one who did not use it at all. Furthermore, the wife cannot "give evidence," that is, her declaration under oath in the presence of the jury— a third party—but if she make a declaration in the presence of her husband and a third party and not under oath, the same is competent if repeated by the third party in court. In other words, her sworn declara-

tion in court is not evidence, but her unsworn declaration out of court is evidence. It is suggested that if the declaration is made in the presence of a third party it is not a confidential communication because, presumably the parties knew of the presence of another person. However, it has been held that if a man and his wife were talking together, thinking that they were communicating in secret, and an eavesdropper, listening at the key-hole, should overhear the conversation, it would thereupon cease to be a confidential communication. *S. v. Wallace,* 162 N. C., 622; *S. v. Randall,* 170 N. C., 757. Hence the confidential character of the communication does not depend upon the known presence of a hearer.

The reason given for admitting the declarations or hysterical outbursts of the wife in the presence of an officer arresting her husband, is that his silence or rebuke is a confession of guilt of the identical crime charged in the warrant in the possession of the officers, even though the wife may not know the nature of the crime for which the husband is arrested. The logical suggestion is that the husband, under such circumstances, "ought to talk back to his wife" and enter into a debate with her upon the question of his innocence. Of course, in some instances this might be a highly dangerous undertaking for a husband, but if he fails to debate the question, her hysterical outburst will be used to convict him. In this situation the unfortunate husband may well exclaim, "Which way I fly is hell."

The present case illustrates the unreason of the rule. Jack Hunt, who admitted that he set fire to one of the buildings, and who was serving a term in the penitentiary therefor, was used as a witness against the defendant, Freeman, and one Caudill. Hunt testified that he entered into a conspiracy with the other two men to burn the dwelling and outbuildings of the prosecuting witness and that Freeman and Caudill participated in the burning thereof. The jury, however, did not believe Hunt because Caudill was acquitted. The evidence against Caudill was identically the same as that against the defendant, Freeman, with the sole exception of the declaration of Freeman's wife. The sheriff testified that when he went to Freeman's house to arrest him his wife began to cry and "take on," and thereupon made the declaration set out in the opinion. It would therefore seem to be clear that the defendant, Freeman, is now on death row under sentence of death and facing execution solely because of the hysterical outburst of his wife.

In my judgment this evidence was incompetent for two reasons:

First. The wife did not accuse the husband of burning a house. Indeed it does not appear that the warrant was read in her presence or that she even knew the nature of the crime laid against her husband.

Under the strain of nervous shock she merely exclaimed: "I told you, John, that you would get into it," etc. Get into what? It is assumed that she meant that she knew of the conspiracy to commit arson and was accusing her husband of guilt of committing the specific crime charged in the warrant, of which ostensibly she knew nothing. In my opinion the exclamation of the wife did not amount to an accusation, and had no probative value as evidence, although it was doubtless used with overwhelming effect before the jury.

I am authorized to say that this is the ground upon which STACY, C. J., also dissents.

· Second. I do not think the evidence is competent because it permits the wife to do indirectly what she cannot do directly for that her sworn declaration is a nullity, but her unsworn declaration, repeated by another, is competent evidence, which, in this case, apparently sends her husband to the electric chair.