COLE FREEMAN v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY

No. 8422SC300

(Filed 15 January 1985)

1. **Evidence § 12— husband's threats—wife's testimony not excluded under hus-band-wife privilege**

    In an action to recover on a fire insurance policy where defendant alleged that plaintiff burned his house for the fraudulent purpose of collecting in-surance benefits, the trial court did not err in refusing to exclude, on the ground that it was protected by the husband-wife privilege, plaintiff's wife's

Freeman v. St. Paul Ins. Co.

testimony that plaintiff threatened her and threatened to burn down their house.

**2. Appeal and Error § 48— objectionable evidence—similar evidence not objected to—no prejudice**

Plaintiff was not prejudiced by testimony that he had beaten his wife in the past, testimony as to why plaintiff's wife asked him if he had burned their house, and testimony by a former neighbor about statements made by plaintiff's wife, since there was other similar evidence to which plaintiff did not object.

**3. Insurance § 121— fire insurance—intentional burning—sufficiency of evidence**

In an action to recover on a fire insurance policy evidence was sufficient to submit the issue of intentional burning to the jury, though defendant could not show that plaintiff was at the scene of the fire when it occurred, where there was evidence of plaintiff's lack of income, prior threats by plaintiff to burn his property, a prior attempt by plaintiff to procure someone to burn his house, previous fires where plaintiff collected insurance benefits, one unsuccessful attempt to collect benefits for smoke damage, incendiary origin, and plaintiff's access to his house.

APPEAL by plaintiff from *Lewis [J. B., Jr.], Judge.* Judgment entered 27 October 1983 in Superior Court, DAVIE County. Heard in the Court of Appeals 27 November 1984.

On 22 July 1980 defendant insurer issued a policy to plaintiff and his wife insuring their dwelling located in Mocksville, North Carolina. The house was destroyed by fire on 30 April 1981, and defendant denied liability. Plaintiff thereafter sued defendant for judgment of $23,881.50. In its answer defendant alleged as a defense that plaintiff intentionally caused or acquiesced in the fire for the fraudulent purpose of collecting insurance benefits. Defendant also filed a counterclaim against plaintiff for recovery of the benefits paid to plaintiff's wife. Plaintiff appeals from the judgment ordering that plaintiff recover nothing and that defendant recover on its counterclaim.

*Hall and Vogler, by William E. Hall, for plaintiff appellant.*

*Yates, Fleishman, McLamb & Weyher, by Joseph W. Yates, III, and Barbara B. Weyher, for defendant appellee.*

ARNOLD, Judge.

Plaintiff has assigned errors to the admission of evidence and to the denial of his motions for directed verdict and judgment not-

withstanding the verdict. We have carefully reviewed each assignment of error and find no prejudicial error.

[1]   Plaintiff first assigns error to the admission of the following testimony elicited from his wife by the defendant:

Q. State whether or not he ever made threats to you?

MR. MORGAN: OBJECTION, husband and wife privilege, Your Honor.

COURT: OVERRULED.

A. Yes.

Q. State whether or not he's ever threatened to burn the house down.

MR. HALL: OBJECT.

COURT: OVERRULED.

A. Yes, sir.

Q. On more than one occasion?

MR. HALL: OBJECT.

A. Yes, sir.

I have left him on other occasions.

Q. Did he threaten to burn the house down on any other occasion when you left?

MR. HALL: OBJECT.

COURT: OVERRULED.

A. I don't remember if it was the times I had left or not, but it was just a thing when he got drunk, he would say it.

. . . .

Q. State whether or not you ever heard Mr. Freeman make any remarks about causing damage to that trailer if it was not moved.

MR. HALL: OBJECT.

COURT: If you heard that.

MR. YATES: Yes.

COURT: OVERRULED.

A. Yes.

Q. What did he say on those occasions?

A. He would just say I'm going to burn the whole place up, or something like that.

Plaintiff argues that the foregoing testimony should have been excluded because of the husband-wife privilege. We disagree.

G.S. 8-56 provides that in any civil action, except as herein specified, the husband or wife of any party in the action or of any person in whose behalf the action is brought, prosecuted, opposed or defended, is competent and compellable to be a witness on behalf of any party to such action. The statute then provides that the privilege applies to actions in consequence of adultery or criminal conversation. The statute emphasizes that "[n]o husband or wife shall be compellable to disclose any confidential communication made by one to the other during their marriage." Plaintiff argues that his wife's testimony involved confidential communications and was therefore erroneously admitted.

Our Supreme Court recently defined "confidential communication" as one that is "induced by the marital relationship and prompted by the affection, confidence, and loyalty engendered by such relationship." *State v. Freeman*, 302 N.C. 591, 598, 276 S.E. 2d 450, 454 (1981). Although the Court in *Freeman* was confronted with the application of the husband-wife privilege in a criminal case, the court formed its definition of "confidential communication" by applying the guidelines set out in decisions interpreting the term under G.S. 8-56. *See id.; see also Wright v. Wright*, 281 N.C. 159, 188 S.E. 2d 317 (1972); *Hicks v. Hicks*, 271 N.C. 204, 155 S.E. 2d 799 (1967); *McCoy v. Justice*, 199 N.C. 602, 155 S.E. 452 (1930). *Cf. State v. Freeman*, 197 N.C. 376, 148 S.E. 450 (1929) (conversation between defendant and wife in the presence of an arresting officer not confidential).

In the case before us it would be absurd to label testimony of threats made by plaintiff to his wife a confidential communication. Clearly such communication was not induced by any affection,

confidence or loyalty between plaintiff and his wife. We further find that his wife's testimony, that plaintiff would threaten to burn down the house and her mother's trailer whenever he was drunk, was not a confidential communication. Former neighbors of plaintiff and his wife testified that they had also heard plaintiff threaten to burn down "the hill" whenever he was drunk. Plaintiff's house, the trailer and the former neighbors' house were located on this hill.

[2]  Plaintiff next argues that the trial court erred in allowing his wife to testify that plaintiff had beaten her in the past. He contends that this evidence was irrelevant and clearly prejudicial. We agree that this testimony was irrelevant; however, we do not find that plaintiff was prejudiced by its admission. Furthermore, plaintiff waived his objection to this testimony when he failed to object to testimony of a former neighbor that she had observed plaintiff assault his wife. "Exception to the admission of testimony is waived when testimony of the same import is thereafter admitted without objection. (Citation omitted.)" *McNeil v. Williams*, 16 N.C. App. 322, 324, 191 S.E. 2d 916, 918 (1972).

We also find no error to the question posed to plaintiff's wife regarding why she asked plaintiff if he had burned their house. She answered, "Because I thought he might have." Plaintiff's wife had already testified that plaintiff had threatened to burn their house on more than one occasion. There was also testimony of other witnesses, admitted without objection, that plaintiff's wife had told them she knew plaintiff was going to burn the house.

Plaintiff next argues that the trial court erroneously allowed a former neighbor, Lois Broadway, to testify about statements made by plaintiff's wife. He contends that Ms. Broadway's testimony was inadmissible because it did not corroborate the testimony of plaintiff's wife.

We first note that portions of Ms. Broadway's testimony were not objected to and are therefore not preserved for review by this Court. App. R. 10(a). Objection was taken solely to the following testimony:

Q. What, if any conversation do you recall at Evelina Taylor's house between you and Opal [plaintiff's wife]—by Opal in your presence?

A. Well, Opal was real distraught, she was real emotional. She was pacing the floor and everything. She said, like, well he finally did it. Or, you know, comments like that.

MR. HALL: OBJECTION, Your Honor, not corroborative to anything said by Opal.

COURT: OVERRULED.

The record on appeal shows that plaintiff's wife had earlier testified that she found out about the fire while she was staying at the Taylor house; that she was "real upset" and that she told the law enforcement officers who came to the Taylor house that plaintiff had threatened to burn the house before. Although there are some variances in the corroborative testimony, they are not sufficient to render the testimony inadmissible. *See State v. Mayhand*, 298 N.C. 418, 425, 259 S.E. 2d 231, 236-37 (1979). Also, other witnesses to the statements made at the Taylor house testified that plaintiff's wife made these statements. Since no objections were made to the witnesses' testimony, plaintiff has not been prejudiced.

[3] Plaintiff's remaining assignment of error goes to the denial of his motions for directed verdict and for judgment notwithstanding the verdict. Plaintiff contends that even when the evidence is viewed in the light most favorable to the defendant the defendant failed to prove that plaintiff caused a fire at his home. Plaintiff specifically contends that the North Carolina courts should require an insurer to show proof of opportunity to set the fire before relying on the defense of intentional burning and that defendant failed to show such opportunity because there was no testimony that plaintiff or someone he procured was at the scene of the fire at the time of its inception. We find such a requirement to be too stringent.

In North Carolina, circumstantial evidence can be sufficient to prove an intentional burning. In *Fowler-Barham Ford v. Insurance Co. and Fowler v. Insurance Co.*, 45 N.C. App. 625, 263 S.E. 2d 825, *disc. rev. denied*, 300 N.C. 372, 267 S.E. 2d 675 (1980), we emphasized that:

Ordinarily, there is no direct evidence of the cause of a fire, and therefore, causation must be established by cir-

cumstantial evidence. *See Stone v. Texas Co.*, 180 N.C. 546, 105 S.E. 425 (1920). It is true that there must be a causal connection between the fire and its supposed origin, but this may be shown by reasonable inference from the admitted or known facts. *Simmons v. Lumber Co.*, 174 N.C. 221, 93 S.E. 736 (1917). The evidence must show that the more reasonable probability is that the fire was caused by the plaintiffs or an instrumentality solely within their control. *See Simmons v. Lumber Co., supra; Collins v. Furniture Co.*, 16 N.C. App. 690, 193 S.E. 2d 284 (1972).

*Id.* at 628, 263 S.E. 2d at 827-828. In *Fowler-Barham Ford* we found that the trial court properly denied the plaintiffs' motion for directed verdict because plaintiffs had the opportunity to have acquiesced in or to have controlled the fire since plaintiff Fowler was present and alone at his dealership when the fire occurred; plaintiffs had a motive for the fire because they were in financial straits; and testimony showed the fire was incendiary. When these circumstances were viewed together, we found them sufficient to submit the issue to the jury.

Defendant here presented an expert in the field of fire investigation who testified that in his opinion the fire was incendiary. Moreover, plaintiff conceded incendiary origin in his brief. Defendant presented further evidence that plaintiff had no income in the year preceding the fire, that his wife was the sole source of income having earned approximately $5,000 the preceding year, and that she left plaintiff three days before the fire. The evidence showed that plaintiff had access to his dwelling and was the last person to have been there prior to the fire. There was evidence that plaintiff had previously threatened to burn his property, that he had previously submitted a claim for smoke damage to his house and was denied insurance benefits and that he had recovered benefits in the past when two of his cars burned. Finally, defendant presented the testimony of Ernest Cranford, an acquaintance of plaintiff. Cranford testified that approximately 10 months before the fire, plaintiff offered him $3,000 to burn his house, and that plaintiff had told Cranford he burned one of his cars in order to collect insurance.

The plaintiff denied making any threats to burn his property or attempting to procure Cranford or anyone else to burn his

house. He further testified that he left his house around 8:00 p.m. on the night of the fire and returned at 1:00 a.m. Firemen had been alerted to the fire at 10:00 p.m., and were still at the scene when plaintiff returned home.

To establish the defense of an intentional burning by an insured, the defendant must prove that the property was intentionally burned and that the insured participated either directly or indirectly in its burning. Plaintiff's motive and opportunity are merely circumstances to be considered in determining whether there has been an intentional burning by the insured or someone procured by him. They are not essential elements of the defense. Here defendant showed motive by presenting evidence of plaintiff's lack of income. Other circumstances for the jury to consider were prior threats by plaintiff to burn his property, a prior attempt by plaintiff to procure someone to burn his house, previous fires where plaintiff collected insurance benefits, one unsuccessful attempt to collect benefits for smoke damage, and incendiary origin. The fact that defendant could not show that plaintiff was at the scene of the fire when it occurred, merely goes to the weight of defendant's evidence. In light of the other circumstances shown by defendant and the fact that plaintiff had access to his house and was the last person to have been there prior to the fire, the jury could reasonably infer that plaintiff caused the fire.

The foregoing evidence presented by defendant was sufficient to submit the issue of intentional burning to the jury, and it was the duty of the jury to weigh this evidence and to determine the credibility of the witnesses. The trial court, therefore, properly denied plaintiff's motions for directed verdict and judgment notwithstanding the verdict.

No error.

Judges WELLS and BECTON concur.