973 F.2d 498
 O-SO DETROIT, INC. d/b/a Towne Club, a Michigan corporation,
Plaintiff-Appellee, Cross-Appellant (91-1158),
Plaintiff-Appellant (91-1432),
v.
HOME INSURANCE COMPANY, a New Hampshire corporation,
Defendant-Appellant (91-1078), Cross-Appellee,
Defendant-Appellee.
 Nos. 91-1078, 91-1158 and 91-1432.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 6, 1992.
Decided Aug. 26, 1992.
Rehearing Denied Sept. 24, 1992.
 
 1
 John W. Bryant (argued and briefed), Eames, Wilcox, Mastej, Bryant, Swift & Riddell, Detroit, Mich., for plaintiff-appellee, cross-appellant.
 
 
 2
 Paul H. Johnson, Jr. (argued and briefed), Judith A. Friday (briefed), Robert L. Mott, Jr., Southfield, Mich., for defendant-appellant, cross-appellee.
 
 
 3
 Before: MARTIN and RYAN, Circuit Judges; and WILHOIT, District Judge.*
 
 
 4
 WILHOIT, District Judge.
 
 
 5
 O-So Detroit, Inc., d/b/a Towne Club (O-So), purchased fire insurance from Home Insurance Company (Home). In November of 1988, property owned by O-So and stored in a warehouse was destroyed by fire. Home refused coverage based on its assertions that the fire was deliberately set or arranged by O-So and that O-So committed fraud or false swearing on its loss reports to Home. In order to compel coverage, a suit was initiated by O-So in the Eastern District of Michigan. At the close of discovery, the District Court denied O-So's motion for summary judgment. The case proceeded to trial, after which the jury returned a verdict in favor of O-So. Judgment was entered on this verdict. All post-trial motions were denied including a motion by O-So for Rule 11 sanctions against Home.
 
 
 6
 Home appeals the jury's verdict and the judgment entered thereon. O-So has filed two cross-appeals from the District Court's denial of its motions for summary judgment and Rule 11 sanctions.
 
 I.
 
 7
 O-So is in the business of producing and selling soft drinks under the brand name "Towne Club." These soft drinks are distributed to customers in glass bottles and wooden crates. Customers pay a deposit on the bottles and crates which is later refunded when the empties are returned to a retailer. However, since 1983, O-So's business has declined and as a result, a number of returnable glass bottles that were formerly used by O-So became unnecessary to its operations. These bottles were stored in their wooden crates atop wooden pallets in a warehouse on Grinnell Avenue in Detroit, Michigan.
 
 
 8
 On April 28, 1988, Home entered into a contract of insurance with O-So which covered the property stored at the Grinnell warehouse, including the glass bottles, wooden crates and pallets. The contract insured against loss of the property as a result of fire, smoke, and other specifically listed perils. Maximum coverage under the contract was $350,000.00.
 
 
 9
 On November 15, 1988, the Grinnell warehouse was damaged by fire. Only a small portion of O-So's property was damaged in this first fire. A second fire on November 30, 1988, however, caused extensive damage to the warehouse and the property of O-So stored within. All parties agree that both fires were the result of arson. In a sworn statement submitted to Home, O-So's president Rino Nazzani estimated the replacement value of the property that was destroyed to be $423,891.53.[1] Home denied all liability under the policy based on its belief that O-So had deliberately set or arranged the fires, and its belief that Mr. Nazzani had committed fraud or false swearing on behalf of O-So when he estimated the loss sustained by O-So.
 
 
 10
 Home's denial of liability resulted in the present lawsuit, and at the close of discovery, O-So moved for summary judgment. This motion was denied after the District Court identified several genuine issues of material fact. However, at the close of O-So's proof at trial, the Court directed a verdict in O-So's favor on the question of the measure of damages, and held that replacement cost rather than actual value would be the measure of any damages awarded by the jury. During its portion of the proof, Home raised the defenses of arson and fraud or false swearing. At the close of all proof, the jury returned a verdict in favor of O-So on the issue of coverage, and judgment was entered on this verdict in the amount of $395,263.45.[2] Post-judgment interest was fixed at 7.95% while pre-judgment interest was computed at 12%. Home's motion for a new trial or amendment of the judgment was denied and this appeal followed.
 
 
 11
 O-So has cross appealed the District Court's denial of its post-discovery motion for summary judgment and its post-trial motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure. All appeals in this matter have been consolidated and this Court is now asked to determine whether the District Court properly: (1) instructed the jury on Home's arson defense, (2) directed a verdict in O-So's favor concerning the measure of damages, (3) calculated pre-judgment interest, (4) denied O-So's motion for summary judgment, and (5) denied O-So's motion for Rule 11 sanctions.
 
 II.
 
 12
 Home contended at trial that it was not obligated to indemnify O-So for its losses because those loses were the result of arson by O-So. The District Court issued the following instruction to the jury in regards to the arson defense:
 
 
 13
 "With respect to the arson: Home Insurance Company asserts that the fires which occurred at the Grinnell Street Warehouse on November 15 and November 30, 1988 were intentionally set or arranged to be set by Rino Nazzani, the sole shareholder of the plaintiff corporation for the fraudulent purpose of collecting money under the fire insurance policy issued by Home Insurance Company. If Home Insurance Company has proved this by a preponderance of the evidence, it is excused from payment.
 
 
 14
 In determining whether or not Plaintiff set or arranged the setting of the fire [sic] as claimed, you may consider every fact and circumstance which tends to establish his involvement. You may also consider his conduct and his statements and the consistency or inconsistency of those statements and conduct.
 
 
 15
 In order to prove an arson defense, Home Insurance Company must prove by a preponderance of the evidence, direct and/or indirect, that Mr. Nazzani or his agents had a motive for causing the fire to be set. Home Insurance Company also must prove by a preponderance of the evidence that Mr. Nazzani or his agents had access or an opportunity to set these fires.
 
 
 16
 If you find, after considering all of the evidence that Home Insurance Company has established by a preponderance of the evidence that Mr. Nazzani, the sole shareholder of the plaintiff corporation, set or arranged for the setting of either of these fires, your verdict will be in favor of Home Insurance Company on the issue of arson. If you do not find Home Insurance Company made such a showing, your verdict will be in favor of the plaintiff, Towne Club, on the issue of arson."
 
 
 17
 (Transcript, September 12, 1990 at 91-93) (emphasis added).
 
 
 18
 Home argues that this instruction does not comport with Michigan law[3]. Specifically, Home takes exception with the italicized portion of the instruction, which states that Home must prove arson by showing motive and access or opportunity. This, says Home, is contrary to Michigan law, under which an arson defense is raised by proving simply that the insured "set fire to the building or caused it to be set on fire." George v. Travelers Indem. Co., 81 Mich.App. 106, 265 N.W.2d 59, 62 (1978). Home argues that by requiring that it prove arson by motive and access or opportunity, the District Court placed upon it an undue burden of proof such that a new trial is required.
 
 
 19
 In Michigan, arson, as a defense to an insurance company's liability under a fire insurance policy, may be proved by circumstantial evidence. Peterson v. Oceana Circuit Judge, 243 Mich. 215, 219 N.W. 934, 934-935 (1928). All parties agree, and the cases cited by O-So establish, that circumstantial proof of motive plus access or opportunity is adequate to establish arson. George, 265 N.W.2d at 62; Crossley v. Allstate Ins. Co., 139 Mich.App. 464, 362 N.W.2d 760, 762 (1984); United Gratiot Furniture Mart, Inc. v. Basic Property Ins. Assoc., 159 Mich.App. 94, 406 N.W.2d 239, 243-244 (1987); Fitzgerald v. Great Cent. Ins. Co., 842 F.2d 157, 158 (6th Cir.1988). However, these cases do not suggest the opposite; that is that arson cannot be established by circumstantial evidence unless by proof of motive and access or opportunity. No authority cited to this Court has held that motive and access or opportunity are mandatory elements of circumstantial proof of the arson defense. In fact, the Supreme Court of Michigan, when asked to consider the propriety of an arson instruction that stated, "[o]pportunity, plus motive, is the test by which you will determine the question as to circumstantial evidence [of arson]," found the instruction to be erroneous. Cipriano v. Mercantile Ins. Co. of America, 284 Mich. 346, 279 N.W. 855, 857 (1938).[4]
 
 
 20
 The instructions given in the present case stated that Home "must prove by a preponderance of the evidence ... that Mr. Nazzani ... had a motive ... [and] had access or an opportunity to set these fires." We find that this portion of the instructions, and specifically the word "must", does not comport precisely with Michigan Law, and is therefore erroneous. However, as did the Supreme Court of Michigan in Cipriano, we find the erroneous portion of the instructions to be harmless. Id.
 
 
 21
 When instructions are challenged on appeal, our duty is not to read the instructions word for word in search of an erroneous word or phrase. Rather, our task is to review the instructions "as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision." Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1010-1011 (6th Cir.1987) (citing Blackwell v. Sun Elec. Corp., 696 F.2d 1176, 1181 (6th Cir.1983)).
 
 
 22
 If the only instruction given in this case was the portion that Home disputes, Home's argument for a new trial would carry more weight. However, the jury was correctly instructed at the outset that if Home proves that Mr. Nazzani intentionally set or arranged the fires, Home is excused from payment. In determining this, the jury was told to consider "every fact and circumstance" either direct or indirect. Finally, at the end of the arson instruction, the jury was again correctly told that if after "considering all of the evidence," they determined that Mr. Nazzani set or arranged the fires, then they should find in favor of Home. The emphasis of the instructions was not that motive and access or opportunity were requirements of the arson defense, but rather that Home had the burden of showing that O-So set or arranged the fires. Placed in the context of these instructions, which we view as a whole, we find that the inclusion of the erroneous "must" was harmless.
 
 
 23
 Home contends that this error could not be harmless in light of its theory at trial that the fires were started by persons without access to the Grinnell warehouse. By instructing the jury that a mandatory element of arson was access, Home argues that the District Court effectively made it impossible to establish arson.
 
 
 24
 The instruction given to the jury stated that access or opportunity was an element of arson. By advancing the theory that persons without access to the Grinnell warehouse started the fires, Home was essentially arguing that anyone had an opportunity to start the fires. Anyone, of course, would include O-So's president Mr. Nazzani, who claimed he had no access. Thus, even under Home's precise reading of the instructions, the arson defense was not foreclosed.
 
 
 25
 Viewing the instruction as a whole, we find that the jury was adequately informed as to the relevant considerations in an arson defense. The misstatement of Michigan law contained therein was neither confusing, misleading nor prejudicial and thus does not require a new trial. See Kitchen at 1011 (citing DSG Corp. v. Anderson, 754 F.2d 678, 679 (6th Cir.1985)).
 
 III.
 
 26
 At the close of O-So's case, the District Court directed a verdict in favor of O-So on the issue of the measure of damages. Specifically, the District Court ruled that, should the jury find in favor of O-So, the measure of damages would be the replacement cost of the bottles, crates and pallets, and not the actual value of those items at the time of the fire.[5] (Transcript, September 7, 1990 at 129-130). It is undisputed that O-So has not actually replaced the items that were destroyed in the fires.
 
 
 27
 Michigan law prevents an insured from recovering replacement costs under a fire insurance policy "unless the property damaged is actually repaired, rebuilt or replaced at the same or another site." Mich.Comp.Laws Ann. § 500.2826 (West 1987). The policy issued by Home to O-So is at least somewhat consistent with this statute in that actual repair or replacement is a condition precedent to the payment of the costs of such repair or replacement:
 
 
 28
 "B. The company shall not be liable [for replacement costs] unless and until the damaged or destroyed property is actually repaired or replaced with due diligence and dispatch, and in no event unless repair or replacement is completed within a reasonable time after such loss."
 
 
 29
 Presumably, the requirement of actual repair or replacement is a hedge against the moral hazard created when the cost of repairing or replacing damaged property exceeds the actual value of the property before it was damaged. In such situations, an insured would collect a windfall if not required to actually repair or replace.
 
 
 30
 However, on at least two occasions, the Michigan Court of Appeals has let stand a trial court's decision to excuse the actual replacement requirement where the insured was financially unable to replace damaged property due to the insurance company's bad faith failure to honor its policy. Pollock v. Fire Ins. Exchange, 167 Mich.App. 415, 423 N.W.2d 234 (1988); McCahill v. Commercial Union Ins. Co., 179 Mich.App. 761, 446 N.W.2d 579 (1989). O-So would have this Court apply the rationale of Pollock and McCahill to the present case and thereby waive the requirement that O-So actually replace its damaged property. We find these cases inapplicable to the present facts.
 
 
 31
 Both Pollock, and McCahill involved dwellings destroyed by fire that were covered by a replacement cost fire insurance policy. Both cases also involved misconduct by the insurance company in its failure to pay the replacement costs of the insured. In Pollock, the court found that the insurance company advanced "no good faith defenses to its actions [of non-payment]." Id. 423 N.W.2d at 237. Similarly, in McCahill, a jury found that the insurance company had engaged in extreme and outrageous conduct during its investigation of the fire, causing it to eventually deny liability. Id. 446 N.W.2d at 583.
 
 
 32
 The Pollock decision was made expressly contingent on the bad faith actions by the insurance company and the Court concluded that "in the face of such lack of good faith processing of [the insured's] claim, the trial court correctly chose to award the replacement cost value to plaintiff based upon equitable considerations." Id. 423 N.W.2d at 237. Though the McCahill court did not affirmatively state that its decision to waive the actual replacement requirement was contingent upon the insurance company's outrageous conduct, the waiver was expressly based on the holding in Pollock. Thus, we find that under current Michigan law, a court may not waive the requirement of actual replacement unless the insured is unable to replace the damaged property due to bad faith actions by the insurance company.[6]
 
 
 33
 There was no evidence presented to the District Court to suggest that Home acted in bad faith when it refused payment based on allegations of arson and fraud or false swearing. In fact, when ruling on O-So's motion for Rule 11 sanctions, the District Court found that "[Home] presented reasonable defenses based on an adequate inquiry into the relevant facts and a sufficient investigation of the relevant law. Furthermore, the record does not reveal that defendant's claims and/or defenses were interposed for any improper purpose."
 
 
 34
 Absent any suggestion of bad faith on the part of Home, the District Court was in error to allow O-So to circumvent Michigan law and the terms of the policy and collect the replacement cost of its damaged property without first replacing that property. Accordingly, we reverse the District Court's directed verdict on the measure of damages and remand for a recomputation of the amount due under the terms of the policy.
 
 
 35
 Home would also have us remand for a new trial on the issue of its liability. This issue should be relitigated, says Home, so that a jury can adequately consider whether O-So committed fraud and false swearing in its proof of loss statement when it claimed damages measured by replacement costs rather than actual value. Home argues that this defense was foreclosed at trial when the District Court, in accord with its directed verdict, erroneously instructed the jury that O-So's claim for replacement costs was the proper measure of damages.
 
 
 36
 An insurance policy may be voided by the insurance company on the grounds of fraud or false swearing if it is shown that the insured wilfully misrepresented a material fact. West v. Farm Bureau Mut. Ins. Co. of Mich., 63 Mich.App. 279, 234 N.W.2d 485, 487 (1975), rev'd on other grounds, 402 Mich. 67, 259 N.W.2d 556 (1977); Campbell v. Great Lakes Ins. Co. of Chicago, Ill., 228 Mich. 636, 200 N.W. 457, 459 (1924).[7] All parties acknowledge that O-So's claim of damages in the amount of $420,587.67 was the correct, or nearly correct replacement cost of the destroyed property. Thus, O-So made no factual misrepresentation. Instead, O-So's error was an error of law; that is, O-So incorrectly asserted that it was entitled to replacement costs rather than actual value. A misrepresentation of law does not satisfy the elements of the defense of fraud or false swearing. See West, 234 N.W.2d at 487 (citing Bernadich v. Bernadich, 287 Mich. 137, 283 N.W. 5 (1938)). Thus, we find as a matter of law that O-So's claim for replacement costs did not constitute fraud or false swearing, and Home's inability to present its defense of fraud or false swearing does not require a new trial.
 
 IV.
 
 37
 When determining the applicable pre-judgment interest rate, the District Court referred to Mich.Comp.Laws § 600.6013(5) (West Supp.1992), which provides in pertinent part that "if a judgment is rendered on a written instrument, interest shall be calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate of 12% per year compounded annually." Accordingly, the District Court awarded pre-judgment interest at the rate of 12%.
 
 
 38
 Home argues that the District Court erred in applying subsection five of this statute and instead should have applied subsection six, which sets a lower pre-judgment interest rate. This lower rate in subsection six applies "[e]xcept as otherwise provided in subsection (5)." Mich.Comp.Laws Ann. § 600.6013(6) (West Supp.1992).
 
 
 39
 We find the language of subsection five to be unambiguous, and by its plain terms, applicable to the present judgment. Thus, subsection six, by its terms, does not apply. The District Court committed no error is fixing the pre-judgment interest rate pursuant to subsection five.[8]V.
 
 
 40
 In its first cross-appeal, O-So argues that regardless of this Court's findings concerning the direct appeal of Home, all matters should be resolved in favor of O-So because the District Court incorrectly denied its motion for summary judgment at the close of discovery. A District Court's denial of a summary judgment motion is upheld absent an abuse of discretion. Hardin v. Straub, 954 F.2d 1193, 1196 (6th Cir.1992). O-So's argument has two parts.
 
 
 41
 First, O-So states that in support of its summary judgment motion, it attached the affidavits of Mr. Nazzani and another witness, Mr. Nelson, both of whom stated that the replacement cost of the bottles, crates and pallets was the same as the actual value of those items. In opposition to the motion for summary judgment, Home submitted the affidavit of its adjuster, Mr. Petrowski, who stated that the actual loss sustained by O-So was $192,744.79. Because Home allegedly failed to qualify Mr. Petrowski, O-So states that the District Court should not have considered his estimate of actual value, but should have only considered the affidavits of Mr. Nazzani and Mr. Nelson. Thus, O-So concludes that summary judgment should have been granted in its favor on the issue of the actual value of the damaged property.
 
 
 42
 Allegations that Home did not properly qualify Mr. Petrowski, even if taken as true, do not necessarily render the denial of summary judgment erroneous. A nonmoving party need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Instead, the relevant inquiry is whether the nonmoving party has designated "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). We find that Mr. Petrowski's affidavit, offered in opposition to the motion for summary judgment, created a "sufficient disagreement" such that the denial of summary judgment at the close of discovery was not an abuse of discretion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).[9]
 
 
 43
 O-So also argues that summary judgment should have been granted in its favor on the issue of liability. Since we have affirmed the jury's finding that Home is liable under the policy it issued to O-So, this portion of O-So's cross appeal is moot.
 
 VI.
 
 44
 In its second cross appeal O-So argues that the District Court improperly denied its motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. O-So argues that because Home admitted it could not prove as part of its arson defense that O-So had access to the Grinnell warehouse, its pleadings were not made in good faith.
 
 
 45
 We have determined that a showing of motive and access or opportunity is not required in every instance where an insurance company raises the arson defense. Thus, Home's admission that it was unable to prove access did not render its arson defense frivolous. We find no error in the District Court's conclusion that Home's claims were based on "an adequate inquiry into the relevant facts and a sufficient investigation of the relevant law." The District Court's denial of Rule 11 sanctions was not an abuse of discretion. Mihalik v. Pro Arts, Inc., 851 F.2d 790, 793 (6th Cir.1988).
 
 VII.
 
 46
 For the foregoing reasons, we AFFIRM the jury's verdict in favor of O-So on the issue of liability. We REVERSE the directed verdict in favor of O-So on the issue of the measure of damages and REMAND for a recomputation of the amount due under the terms of the policy. Finally, we AFFIRM the District Court's calculation of pre-judgment interest, its denial of O-So's motion for summary judgment and its denial of O-So's motion for Rule 11 sanctions.
 
 
 47
 RYAN, Circuit Judge, dissenting.
 
 
 48
 I cannot agree that the district court's erroneous instruction to the jury on the elements of Home Insurance Company's defense of arson was harmless.
 
 
 49
 While it is true, as the majority opinion states, that the correctness of a jury instruction is to be assessed by an examination of the instruction as a whole and not merely by reference to discrete portions examined in isolation, the concededly erroneous instruction in this case was the heart of the court's advice to the jury as to what it "must" find in order to accept Home's defense of arson.
 
 
 50
 Once and only once did the court advise the jury as to the elements of the defense, and when it did so it misstated the law. In addition, once and only once did the court instruct the jury concerning what Home "must prove" and by what measure of proof and, in doing so, erred.
 
 
 51
 The parts of the instruction which the majority opinion finds sufficient to nullify the harmfulness of the court's misstatement of the law are the two sentences immediately preceding the erroneous instruction and the two sentences immediately succeeding it.
 
 
 52
 In the sentences preceding the erroneous statement of the elements of the defense of arson, the court advised the jury what it "may consider" from the evidence which was introduced. In the sentences succeeding the erroneous instruction, the court advised the jury that if it found that Home "has established by a preponderance of the evidence" that the plaintiff's principal shareholder "set or arranged for the setting of either of these fires," the verdict "will be in favor of Home." Of course, the court had, in the immediately preceding statement, advised the jury, erroneously, that in order to prove that Home's shareholder had "set or arranged for the setting of either of [the] fires," Home "must" prove by a preponderance of the evidence the two elements which the majority opinion properly recognizes are not elements of the defense of arson and need not be proved to establish the defense.
 
 
 53
 In my judgment, the district court's erroneous statement of the elements of the defense in this case was the heart of the instruction on liability and essentially forbade the jury from returning a verdict for Home unless it found that Home had proved two propositions--motive and access--that the court mistakenly declared were elements of the defense. The instruction thus contained a material misstatement of the applicable law, and this court should therefore reverse the jury's verdict. Lewis v. City of Irvine, 899 F.2d 451, 456 (6th Cir.1990).
 
 
 54
 In addition, it is of no significance that the Michigan Supreme Court in Cipriano v. Mercantile Ins. Co. of Am., 284 Mich. 346, 279 N.W. 855, 857 (1938), held that the erroneous instruction in that case was harmless.
 
 
 55
 In Cipriano, the trial court's misstatement was a passing reference to the manner in which the factfinder could "determine the question as to circumstantial evidence." It was not an instruction by the trial court that "[o]pportunity, plus motive" constituted elements that must be found in order to establish the defense of arson, as was stated by the court in this case.
 
 
 56
 For the foregoing reasons, I respectfully dissent from my brothers' opinion concerning the liability issue and would set aside the judgment below.
 
 
 
 *
 The Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 This figure was later revised to $420,587.67 due to the salvage of some of the property
 
 
 [2]
 This amount was the sum of the maximum coverage under the policy covering the bottles, crates and pallets plus coverage for damage done to a "hi-lo", which was insured under a portion of the policy with a separate coverage limitation. Pre-judgment interest was then added to the total. The judgment was later amended after a recomputation of pre-judgment interest and the amended amount was $400,435.54. This amended judgment was entered on November 27, 1990
 
 
 [3]
 The basis for federal jurisdiction over these claims is diversity of citizenship. 28 U.S.C. § 1332. State law supplies the rules of decision in federal diversity cases. 28 U.S.C. § 1652; Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)
 
 
 [4]
 Other jurisdictions have specifically held that motive and opportunity are not mandatory elements of an arson defense. Giambra v. Aetna Cas. & Sur. Co., 315 Pa.Super. 231, 461 A.2d 1256 (1983); Freeman v. St. Paul Fire & Marine Ins. Co., 72 N.C.App. 292, 324 S.E.2d 307, 311 (1985). We note these decisions, not to suggest that the Michigan courts would adopt their rationale, but merely as a reference to the specific conclusion we feel was implicitly reached in Cipriano
 
 
 [5]
 The difference between these two methods of valuation is significant. The parties agree that the replacement cost of the property is in excess of $417,000.00, which is well above the policy limit of $350,000.00. The actual cash value, according to Home's adjustor, is $192,744.79
 
 
 [6]
 We note that the appeal styled Elmer Smith & Myrtle Smith v. Michigan Basic Property Insurance Association, Supreme Court No. 90639, is currently pending before the Supreme Court of Michigan. Issues presented in that appeal could be dispositive of the matter currently before this court. However, as of the date of this writing, no decision in the Smith case has been published
 
 
 [7]
 Fraud or false swearing by an insured implies that the insured conveyed a "statement of a fact as true which the [insured] does not know to be true." Campbell, 200 N.W. at 458
 
 
 [8]
 We also reject Home's argument that the District Court's determination of pre-judgment interest negates the effect of § 2006 of Michigan's Uniform Trade Practices Act. Mich.Comp.Laws Ann. § 500.2006 (West 1987). We find no conflict between § 600.6013(5) and § 500.2006. See McCahill, 446 N.W.2d at 587
 
 
 [9]
 In its memorandum opinion and order denying the motion for summary judgment, the District Court did not specifically address the issue of the actual value of the damaged property. Whether or not Home properly set out Mr. Petrowski's qualifications is an issue to be resolved by the District Court on remand when the amount due under the terms of the policy is determined